BRUNETTE, Special Administratrix, Appellant, vs. BIERKE and another, Respondents.

*October 13—November 8, 1955.*

For the appellant there was a brief by *Smith & Smith* of De Pere, and *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan*.

For the respondents there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney*.

GEHL, J. With respect to the question of the verdict which inquired whether Peters was on the sidewalk when struck, the court instructed the jury as follows:

"It appears that there was a concrete sidewalk, five feet wide, running along the west side of the filling-station property, and this is the sidewalk referred to in this question. Plaintiff was either on the sidewalk when struck or on the highway known as Oak Grove avenue. You are instructed

that the apron leading from the sidewalk to Oak Grove avenue on the west side of the filling station was a part of the highway. If you find that plaintiff was on the five-foot-wide sidewalk when struck, you must answer this first question 'Yes.' If, on the other hand, you find that when struck plaintiff was some place west of the west line of the sidewalk, either on the apron or in the street proper, then your finding must be that he was not on the sidewalk when struck, and you should answer this first question 'No.' "

Plaintiff contends that the court was in error in so instructing the jury, that the provisions of sec. 85.10 (24), Stats., require that the apron be considered part of the sidewalk. The statute reads as follows:

"*Sidewalk.* That portion of a highway between the curb lines and the adjacent property lines, unless local authorities designate otherwise."

Read literally the statutory provisions when applied to the facts in this case appear to be inconsistent. Considered apart from the other provisions to which we shall refer, secs. 85.44 (5) and 85.10 (24), Stats., would appear to give to the pedestrian upon the apron the right of way over the driver of the automobile crossing the apron. Sec. 85.10 (24) makes the apron a part of the sidewalk, and sec. 85.44 (5) provides that the pedestrian "shall have the right of way over all vehicles crossing [the] sidewalk."

On the other hand, sec. 85.10 (21), Stats., provides that "a highway is every way or place of whatever nature open to the use of the public as a matter of right for the purposes of vehicular travel," and sec. 85.44 (4) provides that "Every pedestrian crossing a highway at any point other than a marked or unmarked crosswalk shall yield the right of way to vehicles upon the highway." The apron was "open to the use of the public as a matter of right for the purposes of vehicular travel;" its very purpose was to provide a con-

venient approach by motorists to the service station. It was open to use by the public "as a matter of right" because the right of the public to use a street for purposes of travel extends to the entire width of the street, to its whole surface, 25 Am. Jur., Highways, p. 461, sec. 166; *Chase v. Oshkosh* (1892), 81 Wis. 313, 51 N. W. 560. Peters was not on a crosswalk when he was struck. Thus by the provisions of secs. 85.10 (21) and 85.44 (4) the motorist, not the pedestrian, appears to be given the right of way.

In interpreting these statutes we must, if it is possible to do so, harmonize and reconcile them. We should avoid a construction which creates an inconsistency if a reasonable interpretation can be adopted which will not do violence to the words of the provisions, *State ex. rel. McManman v. Thomas* (1912), 150 Wis. 190, 136 N. W. 623, particularly where, as here, they were all passed at one time, by enactment of ch. 454, Laws of 1929. 50 Am. Jur., Statutes, p. 368, sec. 363.

The word "sidewalk" is ordinarily used to designate a portion of a highway which has been set apart for pedestrians as distinguished from that which is used by vehicles, 2 Bouvier, Law Dictionary (3d rev.), p. 3068. Manifestly the apron was not intended for use by pedestrians; an adequate five-foot strip of concrete was provided for them. The apron was constructed to provide a convenient approach for motorists to the service station, to replace or as a substitute for an elevated curb and boulevard which would constitute an obstacle to entry to the station. It was the obvious intent of the legislature to grant to the pedestrian the right of way at places at which they are usually found, upon sidewalks as that term is universally understood. We do not consider that it was intended by the legislature to extend the area in which the rights of pedestrians over the motorist are recognized. We can perceive no reason for so doing. On the contrary, it would be absurd to contend that the apron was constructed

for any purpose other than to accommodate the motorist. It was constructed primarily, if not exclusively, for his easy passage to the station. We must assume that the legislature had these well-known facts in mind when enacting the statutes and that they did not intend that a pedestrian should be given more favorable consideration than is to be given a motorist when the pedestrian is found in a place where he should not be, or where foot travelers are not ordinarily found. We think, therefore, that for the purpose of determining who has the right of way, sec. 85.44 (5), Stats., must be construed as granting to the pedestrian the right of way over the motorist only when he is upon that portion of the sidewalk which is set apart for him, in this case the five-foot strip immediately adjacent to the service-station property, that the apron is to be considered as a part of the highway as defined in sec. 85.10 (21), and that since the jury might properly have found that Peters was upon it when he was struck, it was his duty to yield the right of way and that it was proper for the trial court to instruct the jury as it did.

It is to be kept in mind that we are not here dealing with the precise question as to whether either of the actors in this case had the right to the use of the area occupied by him, although that question must, as we have indicated above, be taken into consideration in determining the relative rights of the parties in that area. The question in this case is not, Did either party have the right to be where he was?—it is, Which of them occupying such position must yield to the other at that point?

Plaintiff contends that sec. 85.44 (4), Stats., does not apply to vehicles emerging from a private driveway, that the operator of a vehicle backing, whether it be upon the highway or emerging from a private driveway, does not have the right of way over the pedestrian. Counsel cite no authorities for these contentions. We find nothing in the statutes which would indicate that the legislature intended

to impose upon the forward-traveling operator who has entered upon the highway at some distance from the scene of an accident a duty different than that which is laid upon the driver who enters the highway immediately preceding the accident and approaches the scene while traveling forward. If the motorist is upon the highway the relative duties and rights of the parties are the same, whether the motorist has reached it from an intersecting street or a private driveway. We do not consider that it is material that a part of defendant's car may still have been upon the sidewalk at the time of the collision; the undisputed fact is that Peters was then upon a part of the highway which had been set apart for the use of vehicular travel. It may be conceded that backing from private property demands a high degree of skill and caution as plaintiff contends. The trial court apparently was of that view, for the jury were instructed that ordinary care on the part of the backing operator requires a vigilant lookout to the rear. That does not, however, affect the rights and duties prescribed by the statutes and which we are without power to extend or restrict.

Plaintiff objected to the inclusion in the verdict of the questions which inquire as to whether Peters was guilty of causal negligence as to lookout. It is contended that it was error to include the inquiry because there was no evidence that he had failed in that respect. The answer to the contention is contained in *Weber v. Mayer* (1954), 266 Wis. 241, 63 N. W. (2d) 318, and *Bassil v. Fay* (1954), 267 Wis. 265, 64 N. W. (2d) 826. In the latter case we held that the evidence sustained a jury's finding that a pedestrian who was struck and killed by an automobile while crossing a street at night and who had an unobstructed view of the automobile approaching, was negligent as to lookout although there was no direct testimony that he did not look or that he failed to see the approaching car.

Plaintiff contends that we should order a new trial because in this case justice has miscarried. To that contention we must reply as did the court in *Hayes v. Roffers* (1935), 217 Wis. 252, 256, 258 N. W. 785:

"The facts as disclosed by the record do not raise the grave doubts as to the justice of the result essential to an exercise of this court's discretionary power of reversal."

*By the Court.*—Judgment affirmed.

BROADFOOT, J., dissents.