St. Francis Hospital, Appellant, v. Wisconsin Employ-
ment Relations Board, Respondent. [Two cases.]

*October 7—November 3, 1959.*

For the appellant there was a brief by *Roemer & Ropella* of Milwaukee, and oral argument by *Myron E. Ropella* and *John P. Roemer*.

For the respondent the cause was argued by *Beatrice Lampert*, assistant attorney general, with whom on the brief was *John W. Reynolds*, attorney general.

Oral argument also by *Robert E. Gratz* of Milwaukee.

BROWN, J. Statutes primarily involved are:

"111.04 RIGHTS OF EMPLOYEES. Employees shall have the right of self-organization and the right to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection; and such employees shall also have the right to refrain from any or all of such activities."

"111.06 WHAT ARE UNFAIR LABOR PRACTICES. (1) It shall be an unfair labor practice for an employer individually or in concert with others:

"(a) To interfere with, restrain, or coerce his employees in the exercise of the rights guaranteed in sec. 111.04.

"(d) To refuse to bargain collectively with the representative of a majority of his employees in any collective-bargaining unit; . . ."

In *Retail Clerks' Union v. Wisconsin E. R. Board* (1942), 242 Wis. 21, 31, 6 N. W. (2d) 698, this court determined:

"The findings of fact made by the board, if supported by credible and competent evidence, are conclusive. Sec. 111.07 (7), Stats. The extent of the review by the courts is the same as that under the Workmen's Compensation Act, that is, there must be some evidence tending to support the finding of the board, and, if this is discovered, the court may not weigh the evidence to ascertain whether it preponderates in favor of the finding. [Case cited.] The drawing of inferences from the facts is a function of the board and not of the courts. [Cases cited.]

"Intent, of course, can usually be shown only by actions. In *Singer Mfg. Co. v. National L. R. Board* (7th Cir.), 119 Fed. (2d) 131, 134, certiorari denied, 313 U. S. 595, 61 Sup. Ct. 1119, 85 L. Ed. 1549, with respect to determining whether collective-bargaining negotiations were carried on in good faith under the National Labor Relations Act, the court said:

" 'Existence or nonexistence of good faith, just as the existence and nonexistence of intent, involves only inquiry as to fact.' "

St. Francis Hospital opened for business in the city of Milwaukee on July 1, 1956. Before the opening and ever since that time the hospital's director of personnel and public relations is a Mr. Szymanski. He testified that to a great extent he is the person responsible for industrial relations in the hospital. The hospital employs four firemen in its heating plant. The firemen determined to join a firemen's A.F.L.–C.I.O. union and on September 17, 1956, the union was certified as their representative for collective bargaining. The union at once proposed to the hospital a contract governing wages and other conditions of employment and started negotiations with the hospital to reach an agreement upon the proposed terms or modifications of them. No agreement was ever reached. In March, 1957, the union filed a complaint with the board, charging that the hospital was guilty of the unfair practice that:

"1. That said respondent employer has failed to bargain in good faith in that said employer while negotiating a col-

lective-bargaining agreement with the complainant did unilaterally and without notice or consent of the complainant union put into effect a wage increase for employees for whom complainant union was then and there negotiating.

"2. That said respondent employer further violated the Wisconsin Employment Peace Act and that said respondent employer after having come to agreement with respect to all matters concerning wages, hours, and other conditions of employment refused to enter into a collective-bargaining agreement for a period in excess of one month from the time agreement was reached, all in violation of said respondent employer's duty to bargain in good faith.

"3. That said respondent employer did conspire with certain of its employees represented by your complainant union to file a petition with the Wisconsin Employment Relations Board to avoid entering into a contract with the complainant union and that said respondent employer prolonged negotiations for said purpose all in violation of the Wisconsin Employment Peace Act in failing to bargain in good faith as required therein."

The hospital answered the complaint, denying each of such charges.

The board expressed its ultimate finding of fact thus:

"18. That the employer, by engaging in the course of conduct from the date of the commencement of concerted activities of its firemen to the present, as found above, has refused and continues to refuse to bargain with the union in good faith and has not engaged and is not engaging in a mutually genuine effort to reach an agreement with the complainant with reference to wages, hours, and other conditions of employment of said firemen."

The order summarized as above then followed.

Sec. 111.06 (1) (d), Stats., condemns as an unfair labor practice the refusal of an employer to bargain collectively with a majority of his employees in any collective-bargaining unit. The collective bargaining so ordered by the statute

does not compel either party to surrender to the demands of the other, but such bargaining does require the parties in good faith to engage in a mutually genuine effort to reach a collective-bargaining agreement. Construing the requirements of the National Labor Relations Act expressed substantially in our own sec. 111.06 (1) (d), the United States court of appeals has said:

"An unpretending, sincere intention and effort to arrive at an agreement is required by statute; the absence thereof constitutes an unfair labor practice." *National Labor R. B. v. Stanislaus Imp. & H. Co.* (9th Cir. 1955), 226 Fed. (2d) 377, 380.

It is unnecessary to detail the evidence which supports the board's finding that the hospital was not attempting in good faith to reach an agreement with the employees' representative. The following summary of the evidence is sufficient.

When Mr. Szymanski learned that the firemen were considering becoming members of a labor union he prepared and distributed to each fireman for signature a statement as follows:

"To Whom It May Concern:
"This is to advise that I, the undersigned person, feel that during my present employment by St. Francis Hospital, I do not wish to be represented by any union bargaining unit nor do I wish to be recognized as a member of an active union group.
"I feel that though I have been, or may be a signed-up and paid-up member of a union, I do not wish to be represented in any manner or by any group whatsoever, while employed by St. Francis Hospital.
"I reserve the right to continue my membership in any group of my own choosing, if such union group wishes to accept me and recognize my membership on an individual and nonrepresentative basis while employed by St. Francis Hospital.

"This statement was voluntarily signed by me while I was off the premises of, and not working for, St. Francis Hospital.

"Signed:

"Witness: I, the above-signed witness, am not an employee of St. Francis Hospital. I have read the foregoing statement."

For an employer to interfere with employees' right to organize and to choose their own representatives to bargain for them collectively is an unfair labor practice. Secs. 111.04 and 111.06 (1) (a), Stats. This "statement" in itself sustains the finding and order referring to the interference by the hospital. Presently the interference with joining the union and selecting a bargaining agent at the time the employees organized is important to show the employer's original attitude toward a union.

At about the same time Szymanski called in the firemen separately and collectively to dissuade them from joining a union. Nevertheless the employees joined the union and the union was certified, September 17, 1956, as their bargaining representative. Thereafter a Mr. Schmidt, business agent of the union, was the person who acted for the union. He initiated negotiations for a labor contract on September 19, 1956, and it quickly appeared that the matter of wages and the duration of the contract were the important items of dispute. The union and the hospital made offers to each other, neither of which was acceptable to the other. The union wanted a contract of $2 per hour for a substantial period. A few meetings were held between Szymanski and Schmidt in which Schmidt made various concessions but the hospital would not modify its unacceptable offer and Szymanski refused to discuss the questions further. Szymanski wrote to Schmidt November 20, 1956, that nothing could be accomplished by

further personal meetings and the hospital could not go further, any further negotiations will only delay matters and "It is my suggestion that you put your reply in writing, and if you are serious about completing these negotiations, you present the contract as specified."

The union then asked the board to offer its services to assist in bringing about an agreement. The board so offered and the hospital declined the offer. The union also asked the Milwaukee Federated Trades Council to lend its good offices to which on January 23, 1957, the hospital replied, in part:

"We are fully aware of all of Mr. Schmidt's recent efforts, and admit that we sincerely admire his determination. However, neither of us is so naive as to not realize that the situation is at a stalemate. In view of this, may we make the following alternative suggestion for the sake of concluding this matter, and allowing you and Mr. Schmidt to concentrate on other more-important things.

"We suggest that the men involved, if they so desire, continue to remain members in good standing with your union. That you discontinue representing them, and that they be allowed to speak for themselves on an individual basis."

In February, 1957, some of the firemen wrote the board asking for different representation. The board replied that it would not hold an election for new certification until at least September 17, 1957. On August 14, 1957, the hospital offered the union a wage of $310 per month, retroactive to August 1st, with a contract expiring September 17, 1957. That wage amounts to approximately $1.80 per hour. The union declined this offer and on August 23, 1957, the employer notified the firemen that:

*"Memorandum To All Firemen.*

"On Wednesday, August 14, 1957, your management offered the representative of Local 125 a proposal which

would increase the rate of pay of each fireman to $310 per month, plus a $10 shift differential for those working on the second or third shift. This proposed increase was to have become effective August 1, 1957.

"The Local Union 125 has rejected this proposal, but your management feels that you should not be penalized because it was not accepted. Therefore, since there appears to be no possibility of an agreement at this time, the above increases will go into effect as of August 1, 1957."

Schmidt then had another meeting with Szymanski and agreed to accept the hospital's wage offer if the contract would run to September 17, 1958. The hospital refused to extend beyond September 17, 1957.

A perusal of the record leaves the reader with an inescapable impression that Mr. Szymanski had retained the opinion that unionization of his firemen and union representation for collective bargaining were undesirable; and while he failed to block unionization he would co-operate as little as possible; and he had acquired the erroneous idea that if he could stall matters until September 17, 1957, certification of the union as the employees' bargaining representative would expire.

However, support for the board's finding does not rest upon anything so vague as an "impression" as we have stated in the last paragraph. When, at the request of the union the Federated Trades Council offered its services to attempt to bring the parties into agreement, the hospital replied very flatly that the employees should speak for themselves. That is exactly what Mr. Szymanski had been attempting to bring about ever since unionization was first contemplated. He still wanted to deal directly with the employees, not with a representative of their own choosing.

Then, while Mr. Schmidt was still attempting to negotiate and had refused to accept wages of $310 per month, the hospital unilaterally increased the former pay to $310. This raise by the employer is evidence itself that the employer is

not and has not been bargaining in good faith, as the court of appeals said in *National Labor R. B. v. Shannon* (1953), 208 Fed. (2d) 545, 548:

"(1) Once a union has been duly certified as the statutory bargaining representative of a unit of employees, the employer is under a duty to enter into sincere, good-faith negotiations with that union, with an intent to settle the differences and to arrive at an agreement. . . .

"(3) . . . The board's theory is that the effect of such a wage increase, even though justified by sound economic and business reasons, is to weaken the union's position as the employees' chosen bargaining representative. A unilateral wage increase, following other acts evidencing a refusal to bargain in good faith, may properly be viewed as a furtherance of the bad faith towards the bargaining representative. [Case cited.] 'Employer action to bring about changes in wage scales without consultation and negotiation with the certified representative of its employees cannot, we think, logically or realistically, be distinguished from bargaining with individuals or minorities.' [Case cited.]"

And *National L. R. Board v. Stanislaus Imp. & H. Co.,* *supra,* page 381, holds that the unilateral wage increase supports the inference drawn by the board that the employer did not bargain in good faith.

Other evidence supports the inference that Mr. Szymanski, who represented the hospital, was antagonistic to union representation and was doing everything possible to avoid bargaining in good faith with the union and to keep from entering into a good-faith bargaining agreement until at least the time when Szymanski believed that the union would no longer be accredited to represent the employees. Meanwhile Szymanski interfered with the union's representation of the employees, thus: Fireman Fredrick testified that in September, 1957, Szymanski counseled him concerning a petition by the firemen to the board to hold an election to choose a different bargaining representative.

The board is the judge of the credibility and weight of the testimony and of the inferences which may be drawn from it in so far as such inferences are reasonable. The record amply sustains the board in facts and reasonable inferences that the hospital did not bargain with the union in a good-faith effort to reach an agreement with the union, its employees' certified representative for collective bargaining. The court must affirm the finding and order of the board.

The other issues which appellant asks the court to determine or to act upon—the alleged failure of the board to dismiss the first unfair-practice complaint and the alleged condition of such dismissal—are not within the issues which the present complaint or answer presented for review. We think such issues are not properly before us.

*By the Court.*—Judgment affirmed.