MUSKEGO-NORWAY CONSOLIDATED SCHOOLS JOINT SCHOOL DISTRICT NO. 9 and others, Respondents, v. WISCONSIN EMPLOYMENT RELATIONS BOARD, Appellant.

*June 30, 1967.*

542

548

550

552

For the appellant there were briefs by *Bronson C. La Follette,* attorney general, and *Beatrice Lampert,* assistant attorney general, and for the respondents there were

briefs by *Jack A. Radtke* of New Berlin, attorney, and *Quarles, Herriott, Clemons, Teschner & Noelke, Laurence E. Gooding, Jr.,* and *Peter J. Lettenberger* of counsel, all of Milwaukee.

Briefs *amici curiae* were filed by (a) *Hart, Kraege, Jackman & Wightman* and *F. Halsey Kraege,* all of Madison, for the Wisconsin Education Association; (b) *Ela, Christianson, Ela, Esch, Hart & Clark* and *James F. Clark,* all of Madison, for the Wisconsin Association of School Boards, Inc.; (c) *Lawton & Cates* and *John A. Lawton* and *David F. Loeffler,* all of Madison, for the Wisconsin Council of County and Municipal Employees (AFL–CIO), United Professional Firefighters of Wisconsin (AFL–CIO), Wisconsin Paid Firefighters Legislative Association, Wisconsin Professional Policemen's Association, Wisconsin County Police, Deputy Sheriffs, and Radio Operators Association, and the Wisconsin State Employees Association (AFL–CIO); (d) *Goldberg, Previant & Uelmen* of Milwaukee, for the Federation of Teachers & Bakery Sales Drivers Local 344; and (c) *Carston C. Koeller* of Muskego.

WILKIE, J.    Four issues are raised on this appeal: [2]

*First,* is the authority of school boards under secs. 40.40 and 40.41, Stats., subject to the limitations of sec. 111.70?

*Second,* is the WERB finding that respondents interfered with, coerced and restrained teachers in its employ in the exercise of their right to freely decline to affiliate with employee organizations supported by substantial evidence?

*Third,* is the WERB finding that the refusal of respondents to renew Koeller's contract was prompted by his labor activities supported by substantial evidence?

---

[2] The issue of the time taken by the WERB in rendering its decision and related findings, conclusions and order was considered by this court previously. See footnote 1, *supra.*

*Fourth,* must the WERB make an express finding that Kreuser, Refling, Ladd and Ussel were agents of the Muskego-Norway school board in order to impute their actions to the board in deciding whether unfair labor practices were committed?

*Relation of Secs. 40.40, 40.41 and 40.45 and Sec. 111.70, Stats.*

One of the principal premises for the trial court's decision was that secs. 40.40 and 40.41, Stats., require the school board to contract individually with each teacher each year. The trial court also approved the school board's policy of offering its teachers the choice of attending conventions or losing two days' pay. This policy, according to the trial court, merely complied with sec. 40.40 (3), which provides:

"The board *may* give to any teacher, without deduction from her wages, the whole or part of any time spent by her in attending a teacher's institute held in the county, or a school board convention or the meeting of any teachers' association, upon such teacher's filing with the school clerk a certificate of regular attendance at such institute, convention or association, signed by the person conducting the institute or convention, or by the secretary of the association." (Emphasis added.)

The WERB found that by threatening its teachers with the forfeiture of two days' pay if they failed to attend teachers' conventions, the school district interfered with the teacher's rights guaranteed by sec. 111.70 (2), Stats., to freely affiliate with or decline to affiliate with any employee organization.[3]

---

[3] "111.70 (2) RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, to affiliate with labor organizations of their own choosing and the right to be represented by labor organizations of their own choice in conferences and negotiations with their municipal employers or their representatives on questions of wages, hours and conditions of

The provisions of sec. 111.70, Stats., apply to the authority of school districts to the same extent as the authority of other municipal governing bodies.[4] Sec. 111.70 was enacted after secs. 40.40 and 40.41 and is presumed to have been enacted with a full knowledge of preexisting statutes.[5] Construction of statutes should be done in a way which harmonizes the whole system of law of which they are a part, and any conflict should be reconciled if possible.[6]

Sec. 40.40 (3), Stats., provides that a school board may give to a teacher without deducting from her wages the whole or any part of time spent in attending a teachers' convention upon filing with the clerk a certificate showing such attendance. Sec. 40.45 provides that days on which state and county teachers' conventions are held are considered to be school days. Under sec. 111.70 (2) teachers have the right to refrain from affiliating with labor organizations and forcing teachers to join employee organizations is expressly forbidden by sec. 111.70 (3) (a) 1. These statutes are not necessarily in conflict. They can all be given effect by construing them together and ruling that teachers cannot be required to attend such conventions under threat of loss of pay, but that teachers who do not attend such conventions can be required to work for the school. In this way teachers can avoid deductions from their salaries while the right to refuse to join a labor organization guaranteed by sec.

employment, and such employes shall have the right to refrain from any and all such activities."

[4] "111.70 **Municipal employment.** (1) DEFINITIONS. When used in this section: (a) 'Municipal employer' means any city, county, village, town, metropolitan sewerage district, school district or any other political subdivision of the state."

[5] *Town of Madison v. City of Madison* (1955), 269 Wis. 609, 70 N. W. (2d) 249.

[6] *Moran v. Quality Aluminum Casting Co.* (1967), 34 Wis. (2d) 542, 553, 150 N. W. (2d) 137; *Pelican Amusement Co. v. Pelican* (1961), 13 Wis. (2d) 585, 593, 109 N. W. (2d) 82; *Brunette v. Bierke* (1955), 271 Wis. 190, 196, 72 N. W. (2d) 702.

111.70 (2) is preserved. If the teacher refuses to work, deductions from his salary could be made, but if the school does not offer work to teachers not attending conventions, the school cannot deny pay to such teachers.[7]

Respondents also contend that secs. 40.40 and 40.41, Stats., permit the school board to refuse to rehire on any ground or for no reason at all. Assuming this to be true, secs. 40.40 and 40.41 can be modified by subsequent statutes which forbid refusing to rehire a teacher for a particular reason. For example, a school board may not refuse to rehire a teacher because of his race, nationality or political or religious affiliations.[8] Modification of statutes is a question of legislative policy. In 1959 the legislature enacted sec. 111.70 (3) (a), which prohibits municipal employers, including school districts, from:

"1. Interfering with, restraining or coercing any municipal employe in the exercise of the rights provided in sub. (2).

"2. Encouraging or discouraging membership in any labor organization, employe agency, committee, association or representation plan by discrimination in regard to hiring, tenure or other terms or conditions of employment."

---

[7] *Archy Jaecks v. West Milwaukee-West Allis, Joint City School Dist. No. 1*, Case III, No. 10552 MP–24, WERB Decision No. 7664, July 15, 1966, CCH Labor Law Reporter, State Laws, vol. 3, par. 49,757.

[8] Sec. 40.435, Stats., provides: "(1) No discrimination shall be practiced in the employment of teachers in public schools because of their race, nationality or political or religious affiliations, and no questions of any nature or form shall be asked applicants for teaching positions in the public schools relative to their race, nationality or political or religious affiliations, either by public school officials or employes or by teachers' agencies and placement bureaus.

"(2) Whoever violates this section shall be fined not less than $25 nor more than $50, or imprisoned in the county jail not less than 5 nor more than 30 days. Violation of this section shall be cause for the removal of any superintendent, member of a board of education or school board, or other public school official."

This also restricts the reasons a teacher can be refused reemployment. A school board may not terminate a teacher's contract because the teacher has been engaging in labor activities.

## Scope of Judicial Review.

The second and third issues concern whether crucial findings of the WERB are supported by credible evidence. This makes it necessary to state the standard of judicial review of the findings of the WERB. It is well established that under sec. 227.20 (1) (d), Stats., judicial review of the WERB findings is to determine whether or not the questioned finding is supported "by substantial evidence in view of the entire record." [9] This court has held that the key to the application of this standard is to determine what is meant by "substantial evidence." [10]

In *Copland* this court quoted from an article by E. Blythe Stason [11] as follows:

" '[T]he term "substantial evidence" should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be set aside.' " [12]

Moreover, in *Copland* we reiterated that " 'substantial evidence' is 'such relevant evidence as a *reasonable mind*

[9] Sec. 227.20 (1) (d), Stats.

[10] *Copland v. Department of Taxation* (1962), 16 Wis. (2d) 543, 554, 114 N. W. (2d) 858.

[11] "Substantial Evidence" in Administrative Law, 89 University of Pennsylvania Law Review (1941), 1026, 1038.

[12] *Copland v. Department of Taxation, supra,* footnote 10, at page 554.

might accept as adequate to support a conclusion.' (Emphasis supplied.)" [13] In *Copland* we declared that the test of reasonableness "is implicit in the statutory words 'substantial evidence.'," [14] and that the "[u]se of the statutory words 'in view of the entire record as submitted' strongly suggests that the test of reasonableness is to be applied to the evidence as a whole, not merely to that part which tends to support the agency's findings." [15]

### *Interference with Right to Affiliate with Employee Organizations.*

In the instant case the evidence supports the WERB's finding and related conclusion that the respondents interfered with, coerced, and restrained teachers in the exercise of their right to freely affiliate with or decline to affiliate with any employee organization. The school district's policy expressed in the teacher's manual strongly implied that teachers were required to join the WEA. Memos circulated by Superintendent Kreuser and Principal Refling indicated that time off with pay would be granted only to teachers who were members of the convening groups (the WEA or the Federation of Teachers). The minutes of an executive committee contain the following statement:

[13] *Copland v. Department of Taxation, supra,* footnote 10, at page 554, quoting from *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 405, 406, 34 N. W. (2d) 238; and *Consolidated Edison Co. v. National Labor Relations Board* (1938), 305 U. S. 197, 59 Sup. Ct. 206, 83 L. Ed. 126.

[14] *Copland v. Department of Taxation, supra,* footnote 10, at page 554.

[15] Ibid. See also *Albrent Freight & Storage Co. v. Public Service Comm.* (1953), 263 Wis. 119, 128, 56 N. W. (2d) 846, 58 N. W. (2d) 410; *Motor Transport Co. v. Public Service Comm.* (1953), 263 Wis. 31, 45, 56 N. W. (2d) 548; 4 Davis, Administrative Law Treatise, pp. 129, 130, sec. 29.03.

"It was brought to the attention of the executive committee by the membership committee that some of our professional staff are not joining the WEA. Mr. Ussel stated that he had talked to the district office and said that wages will be deducted for anyone not attending the WEA Convention."

One of the complainants stated to Principal Refling, "It appears I have the choice of paying the seven bucks or losing two days pay," to which Refling replied, "That's about the size of it."

All these statements and actions indicate a policy of coercing teachers into joining the WEA (or its competitor organization) by threatening them with the loss of pay for failing to join. The WERB found that the WEA was an employee organization and, although this finding was not challenged, it is supported by the evidence. Coercing teachers to join an employee organization is a prohibited practice of sec. 111.70 (3) (a) 1, Stats. The WERB's order to the respondents to cease and desist from this action is valid.

*Termination of Employment for Labor Activities.*

The WERB found that the primary motivation for the refusal of the school board to renew Koeller's contract was because of his activities and efforts on behalf of the MNEA welfare committee. The WERB concluded that the school board discriminated against Koeller in regard to the conditions of his employment for the purpose of discouraging membership in and activities on behalf of the MNEA and was thereby committing a prohibited practice under sec. 111.70 (3) (a), Stats.

A major premise in the trial court's argument for reversing the WERB's determination in this respect is that if a valid reason for discharging an employee exists, this is a sufficient basis for holding that the employee was not dismissed for union activities. The trial court

quotes *Wisconsin Labor Relations Board v. Fred Rueping Leather Co.* as follows:

". . . When a valid reason as heretofore defined is found to be present, it is relatively difficult and may be impossible to more than guess which reason motivated the discharge. The board could find discrimination here only by finding that the assigned reason for the discharge of Assaf was false because if it was not the evidence is in such state that a finding of discrimination would be pure conjecture. Furthermore, we have some misgivings whether, if a valid and sufficient reason for discharge exists, the real or motivating reason has any materiality whatever, unless it can be shown that in other cases where similar grounds for discharge of nonunion men existed, no such action was taken." [16]

In other words, if there was good reason for terminating Koeller's employment because of teaching deficiencies and his differences of teaching philosophy with the school board and the supervisory personnel, it would not matter whether the contract was not renewed for his labor activities. But this is not the law. In *Rueping* there was no speculation as to what the real reason for the discharge was. Moreover, the law concerning discharge for labor activities has changed since 1938. In *N. L. R. B. v. Great Eastern Color Lithographic Corp.*[17] the federal courts stated:

"The issue before us is not, of course, whether or not there existed grounds for discharge of these employees apart from their union activities. *The fact that the employer had ample reason for discharging them is of no moment. It was free to discharge them for any reason good or bad, so long as it did not discharge them for their union activity.* And even though the discharges may have been based upon other reasons as well, if the employer were partly motivated by union activity, the discharges were violative of the Act." (Emphasis added.)

[16] (1938), 228 Wis. 473, 499, 279 N. W. 673.
[17] (2d Cir. 1962), 309 Fed. (2d) 352, 355.

Several other federal cases are in accord.[18] Although these cases all involve a construction of unfair labor practices under the Wagner Act, the case of *St. Joseph's Hospital v. Wisconsin Employment Relations Board* [19] adopts their legal conclusion that an employee may not be fired when one of the motivating factors is his union activities, no matter how many other valid reasons exist for firing him.

The trial court opined that the WERB reached finding of fact No. 29 "purely upon conjecture." It concluded that there was ample reason for the school board's actions for Koeller's deficiencies as a teacher and his philosophical differences with the individual respondents on school matters.

But in this court's judicial review we are not required to agree in every detail with the WERB as to its findings, conclusions and order. We must affirm its findings if they are supported by substantial evidence in view of the entire record. Sec. 227.20 (2), Stats., requires that upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved. In short, this means the court must make some deference to the expertise of the agency.

In *St. Joseph's Hospital v. Wisconsin Employment Relations Board* [20] the WERB found that the discharge of an employee was primarily because of her union activities. The court discussed the scope of review of this finding as follows:

"Finding 20 is a finding of ultimate fact and is of necessity based upon inferences from other testimony before the board. Such inferences may not be based upon

[18] *Wonder State Mfg. Co. v. National Labor Relations Board* (6th Cir. 1964), 331 Fed. (2d) 737, 738; *N. L. R. B. v. Symons Mfg. Co.* (7th Cir. 1964), 328 Fed. (2d) 835, 837; *Marshfield Steel Co. v. National Labor Relations Board* (8th Cir. 1963), 324 Fed. (2d) 333, 337.

[19] (1953), 264 Wis. 396, 59 N. W. (2d) 448.

[20] *Supra,* footnote 19.

conjecture but must be drawn from established facts which logically support them. The drawing of inferences from other facts in the record is a function of the board and the weight to be given to those facts is for the board to determine. *International Union v. Wisconsin E. R. Board,* 258 Wis. 481, 46 N. W. (2d) 185. Such findings, when made, cannot be disturbed by a court unless they are unsupported by substantial evidence in view of the entire record submitted." [21]

The board is the judge of the credibility of the witnesses [22] and the reviewing court is not to substitute its judgment for the judgment of the board.[23]

In essence, in the instant case we must decide whether the WERB's crucial findings, conclusions and order are based on inferences reasonably drawn on the entire record or whether they are the result of conjecture on the part of the WERB.

On the whole record we conclude that the WERB's finding No. 29 is supported by substantial evidence and reasonable inferences drawn therefrom in view of the entire record, that the failure to renew Koeller's teaching contract was motivated by his activities as chairman of the welfare committee of MNEA and not on any shortcomings Koeller may have had as a teacher nor upon his differences with certain policies of the school board and the respondent supervisory personnel.

The WERB's finding No. 29 is the logical final determination as to the motivation behind the failure to renew Koeller's contract following the stepped-up labor activities of the welfare committee in which Koeller had such a major part and the difficulties had in assembling and presenting proposals on salaries and working conditions to Kreuser and the school board.

---

[21] Id. at page 401.

[22] *St. Francis Hospital v. Wisconsin Employment Relations Board* (1959), 8 Wis. (2d) 308, 98 N. W. (2d) 909.

[23] *St. Joseph's Hospital v. Wisconsin Employment Relations Board, supra,* footnote 19.

The WERB placed heavy emphasis on the timing and manner of the dismissal. Although there was dispute about it the WERB could reasonably find that the first recommendation of Koeller's nonrenewal was made at the executive session of the school board on March 2, 1964, immediately following the very meeting when the MNEA proposals for 1964–1965 were submitted to the school board for the first time and were discussed; that at that time no written reasons were given for the dismissal; that on March 9, 1964, a summary of reasons having been prepared since March 2d, the school board acted formally to terminate Koeller's services; that Koeller was not notified of this action until March 12, 1964, the day after the school teachers were called together and told of the school board's determinations about salaries and working conditions for the year 1964–1965 (there having been no negotiations about the MNEA proposals).

In a memorandum accompanying its findings of fact, conclusions of law and order the WERB discussed its reasons for concluding that the respondents were motivated by Koeller's labor activities in ending his employment. The WERB also thoroughly discussed and rejected the other reasons that were alleged to have motivated the respondents relating to the shortcomings of Koeller as a teacher and his disagreement with certain policies established by the school board.

The WERB carefully considered each one of the reasons compiled in the summary prepared by supervisory personnel prior to the school board's final action on March 9th as to why Koeller's contract should not be renewed. The WERB's analysis is summed up as follows:

"It seems incredible to us that the Superintendent could be sincere in the gravity of complaints made against Koeller and at the same time offer to recommend him to another position. We believe this to be a gross act of intimidation."

The WERB concluded:

". . . in light of the entire record, we do not find that Koeller's competence as a teacher or disciplinarian motivated the determination not to extend his teaching contract.

"We have therefore concluded that the Respondent School District refused Koeller a contract in order to discourage membership and collective bargaining activities on behalf of the Welfare Committee of the MNEA."

In any event, it may be assumed arguendo that the school board would have been warranted in terminating Koeller's services on these grounds if the motivation for the action were not connected with his labor activities. Yet the WERB could reasonably find, as it did, that the motivation for failing to renew Koeller's contract was his activities in the MNEA and on behalf of his fellow teachers' welfare.

### Agency.

The WERB specifically found that Kreuser, Refling, Ussel, and Ladd were supervisory personnel in the employ of the Muskego-Norway school district. The WERB considered the actions of these supervisory personnel in determining whether unfair labor practices had been committed by the school board and the school district. The trial court ruled that there was nothing in the findings of the WERB or in the evidence to establish that these supervisory personnel were agents of the Muskego-Norway school board. Therefore, ruled the trial court, actions of the supervisory personnel could not be attributed to the board in determining whether unfair labor practices had been committed, and only actions by school board members could be considered.

The trial court's ruling places form over substance. Where the WERB expressly found that Kreuser, Refling, Ussel, and Ladd were "supervisory personnel in the employ of said School District," such employment is sufficient to constitute an agency relationship. The employment policies of the school district are implemented through the actions of the supervisory personnel. Under the trial court's ruling, the school board could tacitly engage in unfair labor practices through actions by the supervisory personnel, and the employees discriminated against would have no effective recourse. Such a technical interpretation—as made by the trial court—of the findings of the WERB deprives sec. 111.70 (3), Stats., of any real substance.

*By the Court.*—Judgment reversed.

HANSEN, J., took no part.

BEILFUSS, J. (*dissenting*). I dissent from that part of the opinion which holds that the refusal of respondents to renew Koeller's contract was prompted by his labor activities is supported by substantial evidence.

The facts as set forth in the opinion clearly demonstrate the school board was amply justified in discharging Koeller because of his inadequacy in teaching and discipline methods. There is no substantial evidence that the school board discharged him for his union activities; a finding to the contrary rests only upon speculation and conjecture.