State of WISCONSIN, DEPARTMENT OF EMPLOYMENT RELATIONS, Petitioner-Appellant-Petitioner,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent,

DISTRICT 1199W/UNITED PROFESSIONALS FOR QUALITY HEALTH CARE, Intervenor-Respondent.

Supreme Court

*No. 83–1358. Argued October 3, 1984.—*
*Decided January 31, 1985.*

(Also reported in 361 N.W.2d 660.)

For the petitioner-appellant-petitioner there were briefs by *Michael H. Auen, Judith S. Neese, Michael B. Van Sicklen* and *Foley & Lardner,* Madison, and oral argument by *Mr. Auen.*

For the respondent the cause was argued by *John D. Niemisto,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the intervenor-respondent there was a brief by *Cheryl Rosen Weston* and *Cullen, Weston & Pines,* Madison, and oral argument by *Cheryl Rosen Weston.*

Amicus curiae briefs were filed by *Bruce Meredith,* staff counsel, Wisconsin Education Association Council; and, *Michael J. Julka, Jill Weber Dean* and *Isaksen, Lathrop, Esch, Hart & Clark,* Madison, for Wisconsin Association of School Boards, Inc.

LOUIS J. CECI, J. The State of Wisconsin, Department of Employment Relations (State), appeals from an unpublished decision of the court of appeals, dated February 24, 1984, affirming a judgment and order of the circuit court for Dane county, Richard W. Bardwell, circuit court judge, which affirmed an order of the Wisconsin Employment Relations Commission (WERC). We affirm the decision of the court of appeals.

This case involves an unfair labor practice complaint brought on behalf of Karen Hartberg by her labor union, District 1199W/United Professionals for Quality Health Care (Union). The following facts are undisputed.

Hartberg was employed by the Wisconsin Department of Health and Social Services (Department) from January, 1978, to November, 1980. On September 25, 1980, Hartberg received a letter from the acting administrator of the Department's division of health, informing her of an intent to terminate her trainee position as a Public Health Educator (PHE). The reasons set out in the letter for her termination were failure to follow established procedures, absence from her station during scheduled hours, and ignoring instructions from her supervisor. The letter also advised Hartberg of an opportunity to request a hearing to respond to the reasons for her termination. On October 7, 1980, a meeting was conducted, and on October 23, 1980, Hartberg received a letter stating that she had failed to refute the allegations against her.

Hartberg's position was terminated effective October 26, 1980. The effect of this discharge was that she returned to the position she held with the Department prior to her appointment as a PHE. Since this prior position had been eliminated due to reorganization, Hartberg was eventually laid off.

On or about October 1, 1980, Hartberg filed a complaint with the Wisconsin State Personnel Commission, alleging that she was terminated because she had previously filed complaints with the personnel commission and had supported a co-employee's charge of sexual harassment. We are unaware of the outcome of this charge. Subsequently, on January 6, 1981, the Union filed an unfair labor practice charge with the WERC

in accordance with sec. 111.84(4), Stats.,[1] alleging that the State violated the State Employment Labor Relations Act (SELRA)[2] by terminating Hartberg because of her union activities.

The WERC appointed Peter G. Davis, a member of its staff, as hearing examiner, and a hearing was held on April 29–30, 1981. Davis issued his findings of fact, conclusions of law and order, and a memorandum accompanying findings of fact, conclusions of law and order on April 26, 1982. Davis found that the recommendation of two Department employees to terminate Hartberg's appointment was based, in part, upon hostility toward Hartberg for having engaged in protected concerted activity, and, as a matter of law, the State, through these two employees, committed unfair labor practices within the meaning of sec. 111.84(1)(a) and (c) of SELRA.[3]

---

[1] Section 111.84(4), Stats., provides as follows:

"111.84 **Unfair labor practices.** . . .

"(4) Any controversy concerning unfair labor practices may be submitted to the commission as provided in s. 111.07, except that the commission shall fix hearing on complaints involving alleged violations of sub. (2)(e) within 3 days after filing of such complaints, and notice shall be given to each party interested by service on him personally, or by telegram, advising him of the nature of the complaint and of the date, time and place of hearing thereon. The commission may in its discretion appoint a substitute tribunal to hear unfair labor practice charges by either appointing a 3-member panel or submitting a 7-member panel to the parties and allowing each to strike 2 names. Such panel shall report its finding to the commission for appropriate action."

[2] *See*, secs. 111.80–111.97, Stats.

[3] Section 111.84(1)(a) and (c), Stats., provides as follows:

"(1) It is an unfair labor practice for an employer individually or in concert with others:

"(a) To interfere with, restrain or coerce state employes in the exercise of their rights guaranteed in s. 111.82.

". . .

"(c) To encourage or discourage membership in any labor organization by discrimination in regard to hiring, tenure or other

The examiner ordered the State to reinstate Hartberg to her trainee position as a PHE with back pay, but declined to credit the time she was laid off toward the remaining training period, because there was evidence that she had violated work procedures. By operation of sec. 111.07 (5), Stats.,[4] the WERC adopted the examiner's findings of fact, conclusions of law and order on May 17, 1982.

The final order of the WERC was appealed by the State to the circuit court for Dane county pursuant to

terms or conditions of employment, but the prohibition shall not apply to fair-share agreements."

[4] Section 111.07(5), Stats., states,

"**111.07  Prevention of unfair labor practices. . . .**

"(5) The commission may authorize a commissioner or examiner to make findings and orders. Any party in interest who is dissatisfied with the findings or order of a commissioner or examiner may file a written petition with the commission as a body to review the findings or order. If no petition is filed within 20 days from the date that a copy of the findings or order of the commissioner or examiner was mailed to the last-known address of the parties in interest, such findings or order shall be considered the findings or order of the commission as a body unless set aside, reversed or modified by such commissioner or examiner within such time. If the findings or order are set aside by the commissioner or examiner the status shall be the same as prior to the findings or order set aside. If the findings or order are reversed or modified by the commissioner or examiner the time for filing petition with the commission shall run from the time that notice of such reversal or modification is mailed to the last-known address of the parties in interest. Within 45 days after the filing of such petition with the commission, the commission shall either affirm, reverse, set aside or modify such findings or order, in whole or in part, or direct the taking of additional testimony. Such action shall be based on a review of the evidence submitted. If the commission is satisfied that a party in interest has been prejudiced because of exceptional delay in the receipt of a copy of any findings or order it may extend the time another 20 days for filing a petition with the commission."

ch. 227, Stats. The circuit court upheld the WERC's order and held that the WERC's conclusion that the Department's decision to terminate Hartberg was based in part on anti-union animus was supported by substantial evidence in the record. The second issue on appeal was whether the WERC erred in this case in applying our decision in *Muskego-Norway C.S.J.S.D. No. 9 v. W.E.R.B.*, 35 Wis. 2d 540, 151 N.W.2d 617 (1967), to Hartberg's unfair labor practice charge under the provisions of SELRA. The standard adopted by this court in *Muskego-Norway* was applied to an unfair labor practice charge under the Municipal Employment Relations Act (MERA).[5] The trial court reasoned that "no rational basis exists on which to distinguish MERA from SELRA" and held that the WERC correctly applied the holding of *Muskego-Norway* to the facts in this case.

The circuit court's judgment was subsequently affirmed by the court of appeals, district IV, in an unpublished decision dated February 24, 1984. The court of appeals also held that there was substantial evidence that Hartberg was unlawfully terminated in part for anti-union reasons under SELRA. Second, the court of appeals concluded that our decision in *Muskego-Norway* was correctly applied to this case, even though the action arose under SELRA and not under MERA.

The State does not appeal the finding of the court of appeals that there was substantial evidence that Hartberg was terminated in part because of anti-union animus. The sole issue presented for review is one of law, simply, whether this court, with respct to SELRA, should apply the long-standing "in part" test espoused in *Muskego-Norway*, 35 Wis. 2d at 560–62, or the federal test applied by the National Labor Relations Board in *Wright Line, a Division of Wright Line, Inc.*, 251 N.L.

---

[5] *See*, secs. 111.70–111.77, Stats.

R.B. 1083 (1980). This is a question of first impression for this court.

The issue before this court is one of statutory interpretation, specifically, whether an employer who terminates a state employee in part because of his or her participation in unon activities violates sec. 111.84(1)(a), Stats., by interfering with, restraining, or coercing state employees in the exercise of their right to engage in lawful, concerted activities, or sec. 111.84(1)(c), by discouraging membership in any labor organization by discrimination in regard to hiring, tenure, or other terms or conditions of employment. The scope of this court's review is codified in sec. 227.20(5), which reads,

"**227.20 Scope of review. . . .**
"(5) The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law."

Construction of a statute is a question of law, and this court is not bound by an interpretation utilized by the WERC. *Arrowhead United Teachers v. WERC,* 116 Wis. 2d 580, 593, 342 N.W.2d 709 (1984). However, great weight will be given to the construction and interpretation of a statute applied by an administrative agency if the interpretation reflects a position " 'long continued, substantially uniform and without challenge by government authorities and courts,' " *Beloit Education Asso. v. WERC,* 73 Wis. 2d 43, 67–68, 242 N.W.2d 231 (1976) (citation omitted), consistent with the legislature's intent and reasonably contemporaneous with the passage of the statute, *American Motors Corp. v. ILHR Dept.,* 101 Wis. 2d 337, 356–57, 305 N.W.2d 62 (1981). Although the "in part" test has been utilized by the

WERC in the past, we are not persuaded that the WERC's application of the "in part" test to SELRA in this case meets these standards. Absent compliance with these guidelines, this court will accord WERC's interpretation and construction of SELRA due weight, rather than great weight. *Arrowhead,* 116 Wis. 2d at 594, citing with approval *Berns v. Wis. Employment Relations Comm.,* 99 Wis. 2d 252, 261, 299 N.W.2d 248 (1980).

Resolution of the issue at hand necessarily begins with a discussion of our holding in *Muskego-Norway,* 35 Wis. 2d at 560–62. One issue on appeal in *Muskego-Norway* was whether a school board's refusal to renew an employment contract with one of its teachers because of the teacher's activities in the school district's labor association violated MERA. MERA guarantees municipal employees the right to self-organize, to affiliate with labor organizations, and to be represented by labor organizations.[6] Section 111.70(3)(a)1, Stats., prohibits municipal employers from interfering with, restraining, or coercing municipal employees in the exercise of these rights.

The trial court in *Muskego-Norway* reversed the finding of the WERB (now WERC) that the school board had violated MERA, the trial court holding that if a valid reason for discharging an employee exists, there is a sufficient basis for holding that the employee was not dismissed for union activities. 35 Wis. 2d at 560. We rejected this premise, holding,

". . . . an employee may not be fired when one of the motivating factors is his union activities, no matter how many other valid reasons exist for firing him." 35 Wis. 2d at 562.

This standard has been coined the "in part" test. Under *Muskego-Norway,* a municipal employee cannot be ter-

---

[6] *See,* sec. 111.70(2), Stats.

minated if the employer was motivated in part by anti-union animus, even though valid reasons exist for the discharge.

The WERC in this case applied the "in part" test to SELRA, requiring the Union to establish, by a clear and satisfactory preponderance of the evidence,[7] that (1) Hartberg had engaged in protected concerted activity, (2) that the employer was aware of said activity and hostile thereto, and (3) that the employer's action was based at least in part upon said hostility. The examiner's inquiry ceased upon a finding of these three elements, and he concluded that the employer's action constituted an unfair labor practice within the meaning of sec. 111.84(1)(a) and (c), Stats.

The State criticizes this approach and advocates adoption of the test advanced by the National Labor Relations Board (NLRB) in *Wright Line, a Division of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), *enforced* 662 F.2d 899 (1st Cir. 1981), *cert. denied* 102 S. Ct. 1612 (1982).[8] Under the *Wright Line* standard, the employee has the burden of proving that anti-union animus contributed to the employer's decision to discharge the employee. If the employer fails to rebut this *prima facie* showing, he or she can avoid the finding that the action violated the National Labor Relations Act (NLRA) by demonstrating as an affirmative defense that the employee would have been fired even if he or she had not engaged in union activity. The NLRB explains,

---

[7] *See,* sec. 111.84(4), Stats., referring to sec. 111.07, Stats., which reads in pertinent part, "111.07 **Prevention of unfair labor practices.** . . . (3) . . . the party on whom the burden of proof rests shall be required to sustain such burden by a clear and satisfactory preponderance of the evidence." *Accord, Layton School of Art & Design v. WERC,* 82 Wis. 2d 324, 361, 262 N.W.2d 218 (1978).

[8] The NLRB adopts the *Mt. Healthy* test from *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274 (1977).

"First, we shall require that the General Counsel make a *prima facie* showing sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision. Once this is established, the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct.[14]"

"[14] In this regard we note that in those instances where, after all the evidence has been submitted, the employer has been unable to carry its burden, we will not seek to quantitatively analyze the effect of the unlawful cause once it has been found. It is enough that the employees' protected activities are causally related to the employer action which is the basis of the complaint. Whether that 'cause' was the straw that broke the camel's back or a bullet between the eyes, if it were enough to determine events, it is enough to come within the proscription of the Act."

*Wright Line,* 251 N.L.R.B. at 1089.[9]

The *Wright Line* approach was specifically rejected by this court in *Muskego-Norway,* 35 Wis. 2d at 560–62. We recognize that the *Wright Line* test is obviously more advantageous to the employer than to the employee. Application of this standard permits an employer to voice his or her hostility toward union activists and even fire employees engaging in union activity, as long as he or she can provide a legitimate reason for terminating employment. Conduct of this nature will not be encouraged or tolerated by this court, and we, therefore, refuse to join the NLRB in the use of the *Wright Line* test. In reaching this conclusion, we generally recognize the delicate balance that exists between management and labor. On one hand, the state of Wisconsin should be a paragon of fairness toward labor unions. Indeed, Wisconsin has had an admirable history of fostering a favorable climate for labor unions.[10] However, the laws

[9] Approved in *NLRB v. Transportation Management Corp.,* 103 S. Ct. 2469 (1983).

[10] *See generally,* Clark, *The Wisconsin Labor Story* (State Historical Society of Madison 1956); Haferbecker, *Wisconsin Labor Laws* (U.W. Press 1958); Feinsinger and Rice, *The*

of this state must also be flexible enough to allow for efficiency and productivity in the marketplace. We believe that the *Wright Line* test would disrupt the relative balance between management and labor that this state strives for. For the reasons listed below, we reaffirm the validity of the "in part" test of *Muskego-Norway*.

First, the "in part" test recognizes the practical difficulty that a discharged employee may have in proving a violation of SELRA and refuting an allegation of misconduct. The discharged employee and the employer do not stand on equal footing in cases alleging unfair labor practice, because of the employer's advantage of being able to monitor the employee's work performance and document any *bona fide* basis for discipline. The Wisconsin Education Association Council convincingly argues in its *amicus curiae* brief,

"However, an employe has no comparable ability to monitor the employer's behavior. An employe will not be privy to various management discussions regarding the employe's work performance, attitude, or perhaps even his union activites. Thus, an employe usually is placed at a distinct disadvantage in challenging the employment actions of a discreet and purposeful employer."

Second, the State is concerned that use of the "in part" test necessarily excludes an employer's affirmative proof that the employee was fired for legitimate reasons. This is not true. A violation of SELRA is not established by merely proving the presence of protected concerted activity. The employee must show that the employer was motivated, at least in part, by anti-union hostility. Therefore, proof that the employee was discharged for legitimate reasons is relevant in determining the employer's motive. The WERC in this case explains,

*Wisconsin Labor Relations Act* (Univ. of Wisconsin 1937); and *The Wisconsin Employment Peace Act*, 46 Wis. L. Rev. 193 (1946).

"As the key element of proof involves the motivation of [the employer] and as, absent an admission, motive cannot be definitively demonstrated given the impossibility of placing oneself inside the mind of the decisionmaker, [the employee] must of necessity rely in part upon the inferences which can reasonably be drawn from facts or testimony. On the other hand, it is worth noting that [the employer] need not demonstrate 'just cause' for its action. However, to the extent that [the employer] can establish reasons for its action which do not relate to hostility toward an employe's protected concerted activity, it weakens the strength of the inferences which [the employee] asks the [WERC] to draw."

Additionally, in dual-motive cases, evidence that legitimate reasons contributed to the employer's decision to discharge the employee can be considered by the WERC in fashioning an appropriate remedy. For example, to remedy the violation of SELRA in this case, the examiner ordered the State to reinstate Hartberg but, because there was evidence that Hartberg failed to comply with work procedures, declined to credit the time Hartberg was laid off toward the remaining training period.

Finally, we give due weight to the WERC's interpretation of SELRA and, in doing so, we reject the State's argument that the WERC erred in applying the "in part" test to this case arising under SELRA. As stated above, the "in part" test was first applied in *Muskego-Norway*, which involved a violation of MERA. It is helpful to compare the wording of MERA and SELRA, whereupon we find that the rights guaranteed to employees under these acts are identical.[11] It would be illogical to apply a different test to MERA and SELRA merely because a different group of protected persons are involved (municipal employees versus state employees).

[11] *Compare*, secs. 111.70(2) and (3)(a), Stats., with secs. 111.82 and 111.84(1), Stats.

In conclusion, we hold that an employer who terminates a state employee in part because of his or her participation in union activities violates sec. 111.84(1) (a), Stats., by interfering with, restraining, or coercing state employees in the exercise of their rights to engage in lawful, concerted activity, and sec. 111.84(1) (c), by discouraging membership in labor organizations by discrimination in regard to hiring, tenure, or other terms or conditions of employment. When anti-union hostility enters into the state's decision to terminate an employee, not only are the rights of that individual employee violated, but also, in effect, the rights of co-employees are violated, because union participation is stifled in the work place. This result is deemed undesirable by this court.

*By the Court.*—The decision of the court of appeals is affirmed.