MILLAR, Appellant, vs. JOINT SCHOOL DISTRICT No. 2, VILLAGE OF WILD ROSE and certain towns, Respondent.*

*November 5—December 3, 1957.*

* Motion for rehearing denied, with $25 costs, on February 4, 1958.

For the appellant there were briefs and oral argument by *Edward J. Hart* of Waupaca.

For the respondent there was a brief and oral argument by *Boyd A. Clark* of Wautoma.

STEINLE, J.   On March 12, 1955, the plaintiff, William D. Millar, a qualified teacher of this state holding an unlimited life certificate, and the defendant's school board entered into a written contract whereby the plaintiff was employed to teach science and social studies in the public school at Wild Rose for a term of nine months commencing on or about September 6, 1955.   The plaintiff had been a teacher in the Wild Rose public school system for a period of seven years previous to the term for which his services were engaged under the contract in question.   He taught at the school until February 23, 1956, when he was dismissed by action of the school board.   In part the contract provided:

"EMPLOYMENT: The teacher is employed subject to such rules and regulations as have been or may be hereafter adopted by the school board, and subject to the supervision and control of the (superintendent, supervising teachers, and supervising principal).

"TERMINATION: The disqualification of the teacher to continue teaching for any legal cause whatsoever shall automatically terminate the contract. . . ."

The controversy centers primarily upon issues of law arising from events occurring after the school board had requested the plaintiff to attend a special meeting of said board, and the failure of the plaintiff to appear at that meeting.

There is no conflict in the evidence as to material particulars.   At the trial the plaintiff testified that on Friday,

February 17, 1956, he received a written notice from George Brownlow, clerk of the school board, which read as follows:

"Wild Rose, Wis.
Feb. 16–56

"Mr. Millar:

"The school board will meet Tues. Feb. 21 8:00 p. m. at the schoolhouse.

"I have been requested to notify you and request that you be present at this meeting.

"Sincerely,
"George B."

On the morning of Saturday, February 18, 1956, the plaintiff went to the home of the school principal, William Harvey, and asked Mr. Harvey what the meeting was about. Mr. Harvey said he did not definitely know what it was about, but that he imagined it concerned the discipline situation. The plaintiff stated that during the period in which he taught at the school, he had insisted that children who attended his classes were there to learn and to behave,—that they were to pay attention and have their assignments,—that those who did not behave properly were punished accordingly,—that on several occasions some parents considered his discipline too strict and complained to the board, whose members in turn talked to the plaintiff about it. The plaintiff testified further that after he had spoken to Mr. Harvey, he went to the home of the president of the school board, Everett Wilcox, and asked him what the meeting was about. Mr. Wilcox said that he did not know. The plaintiff requested Mr. Wilcox to change the date of the meeting to Monday night, February 20th, as he had another engagement on the night of February 21st, Mr. Wilcox said he would try to do so and that he would let the plaintiff know on the early evening of that day as to whether the board could meet that night. On the evening of February 20th Mr. Wilcox told the plaintiff that he could not arrange the meeting for that night

and that the meeting would take place on February 22d. However, Mr. Wilcox agreed that if the plaintiff could arrange to get the board members together later on the night of February 20th, the meeting would then be held. While the plaintiff was attempting to contact the other members of the board, he met the clerk, Mr. Brownlow, outside the schoolhouse. The plaintiff asked Mr. Brownlow what the meeting was about. Mr. Brownlow told the plaintiff that the school board had previously decided not to rehire him for the following year, and that the meeting was for the purpose of giving the plaintiff an opportunity to resign,—more or less, as plaintiff believed, to save face professionally. When the plaintiff asked Mr. Brownlow whether the matter of discipline of the students was involved, Brownlow said that he was tired of having people call. The plaintiff told Mr. Brownlow that in his own heart and mind he was a good teacher,—that he had the welfare of the children in mind at all times,—that the state department of public instruction had recognized him as a good teacher,—that he would not resign,—that he would not attend the meeting,— that Brownlow could go to hell.

On the same evening the plaintiff again met with Mr. Wilcox and told him that there was no need for a meeting,— that Brownlow had told him that the board would not offer him a contract for the following school year,—that he would not appear at the meeting on February 22d.

On the morning of Tuesday, February 21st, the plaintiff told the students of his first class that he had been informed that the board would not offer him a contract for the following year and that hence he would not be back at the school then. He also stated to the class that the board did not want his type of discipline in the school, and that in the future he would not punish them for infractions,—misconduct which theretofore he deemed important considerations in educa-

tional procedure, such as whispering and moving around without permission. The plaintiff testified that other teachers in the Wild Rose school commonly permitted whispering and similar relaxations of discipline. During the course of that day the plaintiff told his other classes that the board would not engage his services again, but he made no mention to them of relaxing his discipline. On Tuesday and Wednesday (February 21st and 22d) the plaintiff attended and taught all of his classes in the usual way. His students created no disturbances,—the classes all behaved well. There were no unusual absences. The principal, Mr. Harvey, did not contact the plaintiff on those days in regard to his teaching. Mr. Harvey never told the plaintiff that there was anything wrong with his teaching. On Tuesday and Wednesday the plaintiff received no orders from Mr. Harvey or the board requiring that he do anything different in regard to his teaching. Neither Mr. Brownlow nor Mr. Wilcox requested him to attend the meeting after he told them that he would not come, nor did anyone else do so. The plaintiff testified further that he felt that he had answered the board's request to resign in lieu of being refused a new contract and that there was no reason to attend the meeting.

The meeting was held on February 22d. The plaintiff did not attend. The minutes of the meeting read:

"Special Meeting

"Feb. 22—Due to the fact that Mr. Millar could not be present on the evening of Feb. 21, the meeting was called for Feb. 22, 8:00 p. m. Meeting called to order by Pres. E. Wilcox. All members present. Mr. Millar did not appear.

"Discussion on conditions relative to Mr. Millar. Motion by Kenneth Brooks, seconded by Martha Merryfield that Mr. Wm. Millar's contract be terminated immediately due to insubordination. Motion carried unanimously.

"Meeting adjourned.

"George Brownlow."

A communication addressed to the plaintiff and signed by the members of the board was mailed to the plaintiff and was received by him on the morning of February 23d. It read:

"WILD ROSE PUBLIC SCHOOL
Wild Rose, Wisconsin

"February 22, 1956

"Mr. William Millar
Wild Rose Public School
Wild Rose, Wisconsin

"Dear Mr. Millar:

"At a special meeting of the Wild Rose Board of Education, by a unanimous vote, for reason of insubordination, your contract is terminated with the Wild Rose Public School effective immediately.

"Signed:
[Signatures of members of the board.]"

The plaintiff also testified that he had not been notified that the board was going to consider his immediate discharge at the February 22d meeting; that he was given no opportunity to appear before the board in regard to his discharge during the term; that no charges were made against him.

At the trial the parties stipulated that in the event it was to be found that the plaintiff had been illegally dismissed, he would be entitled to damages of $1,250, which amount represented the balance due under the contract.

Everett Wilcox, president of the school board, a witness for the defendant at the trial, did not dispute the testimony of the plaintiff in regard to the plaintiff's conversations with him before the meeting of February 22d. He testified that at a regular board meeting held February 6th, the board decided to ask the plaintiff to a meeting to inform him that his contract would not be renewed, and to give him a chance to resign; that on February 18th when the plaintiff called

on him, the witness did not tell the plaintiff the purpose of the meeting of February 22d; that in the conversation of February 18th when the matter of discipline was discussed, the plaintiff stated that he would never let the public or the school board put a ring in his nose; that after talking to Brownlow on February 20th the plaintiff told the witness that he had been "fired" and said "Everett, I will not take this laying down;" that the only purpose in calling the plaintiff to the meeting was to "save his face" and permit him to get out of it gracefully without having the stigma of discharge by the board upon him; that the plaintiff had no obligation to attend the meeting for the purpose of being discharged or to file his resignation; that the witness was satisfied with plaintiff's teaching, but did not always agree with his discipline; that the plaintiff's immediate discharge was ordered because of his failure to attend the meeting and in view of the report from the principal as to the manner in which the plaintiff conducted himself at the school on the two days preceding the meeting; that while at previous board meetings the members had talked about the plaintiff's methods of discipline, the board at no time discussed the matter with the plaintiff; that plaintiff's discipline was wrong because he used rough language,—he called the pupils knuckleheads and other derogatory terms; that the immediate discharge was determined upon because plaintiff's conduct toward the school changed after Monday night.

William Harvey, the school principal, did not contradict the testimony of the plaintiff with reference to the conversation of said parties on February 18th. Mr. Harvey testified that he attends all school-board meetings and assists in making up the agenda; that on February 18th the plaintiff did not indicate that he would not attend the meeting called for February 21st; that on the morning of February 21st the plaintiff came to the witness' office and asked why the witness had not told him "what the situation was;" that the

plaintiff stated that "he was damned if the school board would lead him around with a ring in his nose," that the plaintiff referred to the board as "lacking guts," "weak-kneed" and being "yellow-bellied," and told the witness to tell them that he was not coming to the board meeting; that the plaintiff did not conduct himself on those days as he should have done in that he "carried himself around and walked around as though everybody was his enemy, that they were picking on him, that he had been accused of something that was not correct,—that the pupils and the other teachers would not accept him as they had in the past."

Mr. Harvey admitted that there was animosity between the plaintiff and himself after the conversation of February 21st. He stated that the plaintiff attended and taught his classes on February 21st and February 22d, and that the witness heard no disturbances. The witness attended one of the plaintiff's classes in that period, and the same was conducted properly—"everything was O.K.;" that no direction was given to the plaintiff in that period to teach differently; that at the meeting of February 22d the witness recommended plaintiff's immediate discharge for the reason that he believed plaintiff's action constituted insubordination and that he felt that plaintiff would not "follow directions on the job the way he should" and "the general disrespect of the board and myself;" "that it was simply a feeling that he [plaintiff] wasn't going to do his job right in the future."

George Brownlow, the clerk of the school district, did not contradict in substance the testimony of the plaintiff with reference to the conversation between himself and the plaintiff on February 20th. Mr. Brownlow testified, however, to the use by the plaintiff of strong language on that occasion after the witness had told him that his resignation was to be requested. He admitted that the plaintiff had said that he would not attend the meeting. The witness stated that the reason he voted for the discharge of the plaintiff was that "we

had a report from Mr. Harvey on conditions in school which we felt would be dangerous to keep him in school, and that he would lose control of the children more or less. That is the way the report came to us, and he wasn't teaching properly, and he was not present in all the classes. That is what we understood that night." The witness also testified that Mr. Harvey on the night of the meeting related his conversation with the plaintiff in which the plaintiff referred to the board in derogatory terms. Mr. Brownlow stated that he had no personal knowledge as to any absence of the plaintiff from his classes during the two days preceding the meeting. He testified that the meeting was called to advise the plaintiff that his contract would not be renewed for another year.

John Williams, a member of the school board, testified that he voted for the immediate discharge of the plaintiff on the basis of the insubordination as related by Mr. Harvey to the board.

While other evidence was presented at the trial, it is not relevant to the issues upon this appeal.

Schoolteachers are not public officers. They are employees. *State ex rel. O'Neil v. Blied* (1925), 188 Wis. 442, 206 N. W. 213. A school board has implied power to dismiss a teacher before the expiration of his term of service for good and sufficient cause. *Curkeet v. Joint School District* (1914), 159 Wis. 149, 152, 153, 149 N. W. 708. If a teacher fails to perform his duties under his contract, the board may discharge him from further service. *Tripp v. School District* (1881), 50 Wis. 651, 7 N. W. 840. The only power which the board has to discharge a teacher is that which the board may exercise on behalf of the district when the teacher is guilty of breach of his contract, which at common law would justify an employer in discharging his servant, or when the teacher has lost all right to teach the school by reason of the

annulment of his certificate in the way prescribed by the statute. *Tripp v. School District, supra.*

In the instant case, as is manifest from the minute entry of the school board, the written notice of dismissal from the board to the plaintiff, and the findings of the court, the plaintiff was discharged before the expiration of his term for cause involving insubordination and disrespect. We are thus not concerned with considerations of incompetence in teaching or failing to manage and control the school.

Ordinarily an issue as to whether there was sufficient cause for the removal of an employee is a matter of law unless provided for in the contract of employment. As said in *Thomas v. Beaver Dam Mfg. Co.* (1914), 157 Wis. 427, 430, 147 N. W. 364:

"What constitutes sufficient ground for discharging an employee is matter of law unless provided for in the contract of employment; but where the facts are in dispute the case, under proper instructions, should be submitted to the jury."

The issues on this appeal are very limited in scope. Involved only are questions (a) whether as a matter of law the failure of the plaintiff to attend the board meeting constituted insubordination, and (b) whether as a matter of law the disrespectful remarks on the part of the plaintiff to members of the board concerning such individual members or the board itself, were provoked by action of the board members so as not to legally justify the discharge of the plaintiff during the term of his contract.

In *Thomas v. Beaver Dam Mfg. Co., supra,* this court stated (p. 429):

"Any inexcusable substantial violation by an employee of instructions, or neglect of duty of a substantial character, or any misconduct inconsistent with the relations of master and servant and which might injuriously affect the former's busi-

ness, regardless of any express agreement on the subject, constitutes good ground for discharging the employee."

In *Green v. Somers* (1916), 163 Wis. 96, 99, 100, 157 N. W. 529, it was said:

"An employer has the right to give all lawful and reasonable commands deemed by him necessary to the proper management of his business, and the employee's duty is to obey such commands where there is nothing in the contract of employment to relieve him from such duty.

"Any inexcusable and substantial insubordination on the part of an employee or wilful refusal to obey such commands amounting to insubordination, is good ground for discharge. *Thomas v. Beaver Dam M. Co.* 157 Wis. 427, 147 N. W. 364; 26 Cyc. 992. Such a case is to be distinguished from a case where there has been a mere breach of duty, it being in dispute whether wrong was intended or injury inflicted, in which latter case it is a question for the jury whether such breach is good ground for discharge. *Schumaker v. Heinemann,* 99 Wis. 251, 74 N. W. 785."

The general rules supported by the great weight of authority with respect to insubordination by an employee and insolence or disrespect toward an employer are well stated in 35 Am. Jur., Master and Servant, pp. 478, 480, secs. 44, 48. In sec. 44 it is said:

"Among the fundamental duties of the employee is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer, and wilful or intentional disobedience thereof, as a general rule, justifies a rescission of the contract of service and the peremptory dismissal of the employee, whether the disobedience consists in a disregard of the express provisions of the contract, general rules or instructions, or particular commands."

In sec. 48 it is noted that:

"Unprovoked insolence or disrespect on the part of the employee toward the employer or the latter's representative

may afford ground for the discharge or dismissal of the employee prior to the conclusion of the term of employment."

As to disobedience and insubordination see also 56 C. J. S., Master and Servant, p. 432, sec. 42h.

In *Koplitz v. Powell* (1883), 56 Wis. 671, 673, 14 N. W. 831, it was said:

"But the mere request to perform such unseasonable service would not of itself justify the servant in quitting the employment. *Nor would the refusal to perform such unseasonable service justify his discharge by the defendants.*" (Italics supplied.)

In *Loos v. Geo. Walter Brewing Co.* (1911), 145 Wis. 1, 3, 129 N. W. 645, it was stated:

"It has been held that a request to perform an additional service of the same kind is not a discharge. *Koplitz v. Powell,* 56 Wis. 671, 14 N. W. 831. As long as the servant is permitted to perform the services he contracts for, he cannot treat a mere request or direction to perform additional services as a discharge. Neither would a master be justified in discharging a servant for a refusal to perform services outside the scope of his employment."

In the light of the principles referred to above, we are of the opinion that the plaintiff's failure to attend the meeting on February 22, 1956, did not constitute insubordination. It clearly appears that at the meeting held on February 6, 1956, the board decided not to renew the plaintiff's contract for the following term. It was not necessary that the board summon the plaintiff before it merely to advise him of such determination. Sec. 40.41 (2), Stats., provides that a teacher shall be given *written notice* of renewal *or refusal of his contract* for the ensuing school year on or before April 1st of the school year during which such teacher holds a contract of teaching employment, and that if written notice is not so given, his service shall be continued for the ensuing school

year. It is manifest that the only object of requiring the plaintiff to attend the meeting of February 22, 1956, was to afford him an opportunity to resign and save face. When the plaintiff contacted Mr. Harvey, the principal, on February 18th, he was told by Mr. Harvey that he did not know what the meeting was about. In his conversation with the plaintiff Mr. Harvey indicated that it probably concerned the plaintiff's method of discipline at the school. The plaintiff then and there defended his action in such regard. It appears from the evidence that the plaintiff exacted stricter discipline from the pupils than did some of the other teachers at the school. Actually the matter of plaintiff's discipline is not in issue. In the conversation of February 18th with Mr. Harvey, the plaintiff evinced no disposition to remain away from the meeting of the board. When the plaintiff contacted Mr. Wilcox he was told that Wilcox did not know the purpose of the meeting, although, as later appeared, Wilcox was aware of it. The plaintiff's attempt to have the meeting called earlier than was scheduled indicates his willingness at the time to attend. It was not until the plaintiff learned from Mr. Brownlow that it was the intention of the board not to enter into a contract with him for the following school year, and that plaintiff's presence at the meeting was desired only for the purpose of affording him an opportunity to resign and thereby save face, that the plaintiff determined not to attend the meeting. We have no hesitation in deciding that the direction requiring the plaintiff to appear for the purpose of resigning and saving face was not reasonable. The board, of course, was free for any cause or no cause to refuse a contract to the plaintiff for the following school year, and under sec. 40.41 (2), Stats., was required only to notify the plaintiff in writing of its unwillingness to engage his services in the future. The plaintiff, it seems to us, had a right to rely on the information furnished to him by the clerk. Obviously,

the plaintiff in language unmistakable indicated to Messrs. Brownlow, Harvey, and Wilcox his intention of not attending the meeting for the purpose for which it was called. He was not obliged to appear for such purpose. The evidence relating to events thereafter will be considered in connection with our consideration of the claim of the board to the right of discharging the plaintiff for disrespect to the board and its members.

The discharge was not directed because of inefficiency in teaching nor for the employment of improper disciplinary methods. Besides being grounded upon the plaintiff's failure to attend the meeting, it was predicated upon the school principal's belief that he might not conduct himself properly for the balance of the term. That belief was based upon the principal's observation that the plaintiff after indicating refusal to resign, assumed an attitude for two days before the meeting of not having been dealt with fairly by the board. His teaching during that period was on the same high level as before. No disorder resulted when he relaxed the discipline. While the plaintiff's statements to the students that his services as teacher were not to be re-engaged and that he would consequently relax his discipline, may not have been tactful, there is no showing that the same had any adverse effect upon the students either in the matter of their instruction or their conduct. Clearly there was no failure on plaintiff's part with respect to his responsibilities under the contract. In our opinion the board's apprehensions were not well grounded. Had the plaintiff thereafter been found wanting in his responsibilities, dismissal would have been in order.

We treat now with the item of alleged disrespect to the employer. It seems to us that the plaintiff's several disrespectful remarks were provoked by the statements of the members of the board to whom they were directed, and also

by the action of the board, and that consequently they did not furnish ground for dismissal.

The statements by the plaintiff to Messrs. Harvey and Wilcox that he would not let the public or the board put a ring in his nose, were made when there was a discussion between them respectively as to discipline. Obviously the plaintiff believed that he was correct in his view as to the theory of proper discipline and his application thereof. It is clear that he was willing to stand his ground before the board as to such matters. Since there is no finding that his methods of discipline were contrary to the best interest of his pupils, such remark, although undiplomatic, was not in our opinion insolent or contemptuous under the circumstances so as to constitute disrespect. The statement to Mr. Brownlow that he "could go to hell" was made after Brownlow had apparently wounded the plaintiff's feelings by declaring that he was "tired of having people call," and that the purpose of the meeting was to give the plaintiff an opportunity to resign and save face. The statement to Mr. Brownlow was clearly provoked, and was not a valid basis for dismissal. While the statements of the plaintiff to the principal, Mr. Harvey, at the latter's office on the day following that when the plaintiff learned that his contract would not be renewed and that he would be expected to resign at the meeting and save face, are not to be approved, nevertheless, when considering the circumstances under which the same were made, it seems to us that they were provoked and therefore did not justify immediate dismissal. They were made to a fellow employee who was in a supervisory capacity and with whom the plaintiff had worked at the school for years. They were not made under circumstances where they tended to degrade the board before the pupils or the public. They referred to the board's failure to support the plaintiff in the kind of discipline that he had consistently enforced over a long period of time

and which he believed best for the welfare of the students. It does not appear that the principal had been critical of plaintiff's method of discipline theretofore, nor is there proof that the plaintiff's methods in such regard were adverse to the pupils' best interests. Animosity was engendered between these two men on that occasion. It is apparent that it carried over into Mr. Harvey's attitude when he informed the board that he felt that the plaintiff "wasn't going to do his job in the future," and prevailed upon the board to discharge the plaintiff immediately. Members of a school board are public officers, and their official actions, of course, are subject to the scrutiny and constructive criticism by all,—certainly not excluding teachers whose professional motives are demonstrated to be of the highest, and whose zeal and effort on behalf of their charges is indicated as being salutary and sincere. The remark of the plaintiff to Mr. Wilcox that "he would not take this laying down" was made very shortly after the plaintiff learned from the clerk that his contract would not be renewed, and that he would be expected to resign at the meeting to save face. Knowing that the board had no legal power to compel his attendance at the meeting merely to force his resignation so as to save face, the plaintiff deemed himself stultified and was vexed by the board's direction to appear for such purpose. We are not able to say that he was unjustifiably indignant. It is considered that this remark too was provoked and under the circumstances did not furnish a valid basis for immediate discharge.

The matter of disrespect was not pleaded by the defendant. The answer was not amended to conform with the proof. The proof indicates that the disrespectful remarks were provoked by the defendant's representatives. It does not appear that the defendant, the public, or the pupils were prejudiced thereby. We are not impressed with the defendant's position on this appeal that had the plaintiff appeared at the

meeting, he might have been afforded an opportunity to explain his demeanor during the two-day period after he had been advised that his resignation would be expected. However, as is manifest, he was summoned only for the purpose of resigning and saving face, and not having received notice to attend the meeting to defend his demeanor during the two days preceding the meeting, his failure to be present was not insubordination and cannot react to the detriment of his rights. We are obliged to determine that under the circumstances the immediate discharge was not justified either on the basis of insubordination, disobedience, or unprovoked disrespect, and that the plaintiff is entitled to damages in amount as stipulated.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff against the defendant for $1,250 with costs.

BROADFOOT, J. (*dissenting*). I must respectfully dissent with the result reached in this case by the majority of the court. The record discloses that the school board requested plaintiff to attend a meeting of the board. We must presume that the object of the meeting was in the interests of the school. Plaintiff first asked that the meeting be adjourned so that he could keep a bowling engagement. He was willing to inconvenience several other persons for a purpose not connected with the school. The meeting was adjourned to accommodate him. He then learned unofficially from a single member of the board that one subject to be discussed did not meet with his approval. He immediately used abusive language toward the individual member of the board and made highly disrespectful remarks about the entire board. He then quarreled with the principal of the school and made further disrespectful remarks about the board, all before the time of the adjourned meeting which he refused to attend. In my opinion, the refusal to attend the meeting constituted a refusal

to accede to a reasonable request by his employer and that is insubordination. It further appears to me that, in view of plaintiff's attitude, other difficulties were bound to occur during the balance of the term which would necessarily have been detrimental to the school and the students. In my opinion the school board was entirely justified in terminating plaintiff's contract.

I am authorized to state that Mr. Justice BROWN concurs in this dissent.