MACK, and another, Plaintiffs-Appellants: DOBBS, and others, Plaintiffs, v. JOINT SCHOOL DISTRICT NO. 3, VILLAGE OF HALES CORNERS, CITIES OF GREENFIELD & FRANKLIN, MILWAUKEE COUNTY, Defendant-Respondent.†

Supreme Court

*No. 77–104. Argued September 10, 1979.—Decided December 4, 1979.*

(Also reported in 285 N.W.2d 604.)

† Motion for reconsideration denied, with costs, on January 15, 1980.

478

For the appellants there were briefs by *John S. Williamson, Jr.,* and *Goldberg, Previant & Uelmen, S.C.,* of Milwaukee, and oral argument by *John S. Williamson, Jr.*

For the respondent there was a brief by *Michael R. Wherry, Mark F. Vetter* and *Mulcahy & Wherry, S.C.,* of Milwaukee, and oral argument by *Michael R. Wherry* and *Mark F. Vetter.*

CONNOR T. HANSEN, J.  On April 22, 1976, fourteen teachers, each a member of the Whitnall Area Education Association and each of whom was employed as

a full time teacher for respondent Joint School District during the 1975–1976 school year, brought an action against respondent for the purpose of obtaining a declaratory judgment, declaring that their individual teacher's contracts were in full force and effect for the 1976–1977 school year. Plaintiffs also sought an order permanently directing respondent to specifically perform its contract with each plaintiff for the 1976–1977 school year.

Respondent filed an answer and counterclaim praying for judgment, declaring that secs. 111.70, 118.22 and 118.23, Stats., permitted respondent to lay off teachers in accordance with the provisions of Section 8.5 *Layoff Clause* in the 1975–1976 collective bargaining agreement between the School Board of respondent Joint School District and the Whitnall Area Education Association.

Both parties moved for summary judgment and the following facts appear in the pleadings and supporting affidavits.

Each of the plaintiffs entered into an individual teacher's contract of employment with the respondent for the 1975–1976 school year between March 13, 1975, and August 28, 1975. Each of the contracts stated, under the heading "General Conditions":

"2. Incorporated herein by reference and made a part of this contract are the terms and conditions of the collective bargaining agreement that may be in force and effect during the school year, between the Whitnall Area Education Association and the District."

In August, 1975, the School Board of respondent Joint School District No. 3 and the Whitnall Area Education Association entered into a collective bargaining agreement which became effective August 28, 1975, and was to remain in effect until August 26, 1976. Section 8.5 of this agreement was entitled "Layoff Clause" and provided:

"Section 8.5—Layoff Clause

"1. If necessary to decrease the number of teachers in the School District because of a substantial decrease of pupil population, the Board shall consider first those teachers volunteering for layoff. Thereafter, teacher layoff shall be in reverse order of appointment, or in case of teachers who had previously terminated employment, their last reappointment in the District.

"2. In determining the reverse order of appointment, teachers working full time will hold the highest attainable rank of seniority in the layoff procedure.

"3. Supervisors or administrators returning to teaching positions within the District shall retain seniority for the years they had held a teaching assignment in the District.

"4. Teachers once having worked full time in the Whitnall District but since choosing to teach part time, must apply for a full time position by October 1, 1975 and must remain available for a position that opens in order to retain full time seniority rights.

"5. Teachers who are working less than full time shall hold a subordinate level of seniority, and their status in respect to one another shall be determined on the basis of years of continuous service in the District.

"6. In making the last person hired the first person laid off, the Administration shall attempt to arrange staff on the basis of qualifications by State Certification in the subject areas and grade levels.

"7. Teachers selected for layoff shall be notified in writing of the layoff on or before March 15 of the current school year.

"8. Under the terms of this Article, no teacher may be prevented from securing other employment while being laid off.

"9. Teachers on layoff shall be given preference for substitute teaching within the District in positions for which they qualify.

"10. Teachers laid off in accordance with this Article shall be reinstated in reverse order of being laid off for vacancies that occur in their area of certification. Reinstatements shall be made with credit and accrued benefits from prior years of service in the District but without additional seniority or incremental credit for the period of layoff.

"11. Teachers to be recalled must keep a current address on file with the District Office, must provide a yearly intent to return and are obliged to respond to a notice of recall within fifteen (15) working days that they will commence employment on the date specified, or with reasonable cause, no later than the next school year. Any notice shall be considered received when sent by registered letter, return receipt requested, to the teacher's last known address. Failure of a teacher to respond shall result in termination of any and all re-employment rights as provided in this Article.

"12. No new appointments shall be made while teachers are laid off from the District and are available and qualified by State Certification to fill the vacancies.

"13. If a teacher has been laid off for a period of seven (7) years without reinstatement, all rights under this Agreement shall be terminated.

"14. Any full-time teacher placed on part-time employment because of the need to reduce teaching staff shall retain full seniority rights and benefits in proportion to actual time of employment.

"15. Any grievance related to layoff will enter the grievance procedure at the Superintendent's level.

"16. Nothing in the layoff procedure as provided in the preceding paragraphs is intended to supercede tenure rights."

At no time prior to March 1, 1976, did respondent inform any of the plaintiffs by preliminary notice in writing that respondent was considering nonrenewal of the teacher's contract of that plaintiff, and at no time prior to March 15, 1976, did respondent give any of the plaintiffs written notice of renewal or refusal to renew his/her contract for the ensuing year.

By letter dated March 10, 1976, respondent gave each plaintiff a notice of layoff effective with the close of the present school term, June 11, 1976. The notice stated the layoff was due to a substantial decrease in pupil population and was no reflection upon their abilities. It also advised them of their rights and benefits as set forth in Section 8.5 *Layoff Clause* in the master agreement.

On March 30, 1976, each plaintiff notified the Superintendent of the Whitnall Area Schools, by letter, of the acceptance of his/her individual continuing contract and employment with the Whitnall Area Schools for the 1976–1977 school year, pursuant to sec. 118.22, Stats.

On April 6, 1976, the Superintendent, by letter, advised the plaintiffs that the School Board, by its Notice of Layoff, had not sought to terminate their employment relationship with the School District, but that the purpose of the Notice of Layoff was to inform them that they would be considered in a layoff status during the 1976–1977 school year. The letter again informed each plaintiff that the notification of layoff was issued in accordance with the provisions in Section 8.5 *Layoff Clause* in the collective bargaining agreement.

The affidavit of the Superintendent, in support of the respondent's motion for summary judgment, details the decline in the student enrollment for a six-year period. This affidavit reflects a total decline of student population of 520 students of which 193 occurred in the 1975–1976 school year. It also estimates a further decline in student population for the 1976–1977 school year of 174 students.

No issue is made of the fact that these figures are inaccurate or that they do not represent a substantial decline in student population.

Subsequent to the commencement of this action, 12 of the 14 teachers were recalled from layoff status. The remaining plaintiffs are Paulette Mack and Sharon Schermerhorn.

In disposing of the motions for summary judgment, the trial court held that the collective bargaining agreement was to be construed in conjunction with sec. 118.22 (2), Stats., and, as a result, Section 8.5 *Layoff Clause* of the collective bargaining agreement did not violate the provisions of sec. 118.22(2). The trial court also

held that no board was restricted from hiring a teacher so laid off during any such layoff period. The trial court further pointed out that the plaintiffs had accepted the benefits of the collective bargaining agreement and, having accepted those benefits, the plaintiffs had in effect waived the right to assert that that provisions of sec. 118.22(2) were violated by the collective bargaining agreement.

Judgment was entered on February 28, 1977, declaring that the teacher's contracts of plaintiffs Paulette Mack and Sharon Schermerhorn are in full force and effect for the 1976–1977 school year, and that the provisions of secs. 111.70 and 118.22, Stats., permit the defendant to lay off teachers in accordance with the provisions of Sec. 8.5 Layoff Clause in the 1975–1976 agreement between the School Board of Joint School District No. 3, Village of Hales Corners, Cities of Greenfield and Franklin, Milwaukee County, and the Whitnall Area Education Association.

On April 19, 1977, plaintiffs filed a motion for rehearing. On May 16, 1977, the trial court denied the motion and affirmed its decision of February 24, 1977. The plaintiffs now bring this appeal.

Before considering the principal issues in this case, we briefly address the appeal taken by the appellants from the order of the trial court denying their motion for a rehearing. The appeal from this order has not been challenged, nevertheless this court stated in *Dombrowski v. Tomasino,* 24 Wis.2d 16, 18, 127 N.W.2d 786 (1964), quoting from *Yaeger v. Fenske,* 15 Wis.2d 572, 573, 113 N.W.2d 411 (1962):

" 'It is the duty of this court, notwithstanding no issue has been raised by counsel, to take notice of a point which goes to the jurisdiction of this court on appeal and to dismiss the appeal on its own motion, if the order of the trial court is not an appealable order.' "

■■■■■

■ The appealability of orders entered on motions to vacate or modify or for a rehearing on prior appealable orders or judgments depends on whether or not the issues presented in the post judgment motion could have been reviewed on an appeal from the judgment itself. *Ver Hagen v. Gibbons,* 55 Wis.2d 21, 24, 197 N.W.2d 752 (1972). In that case, where the defendants successfully moved for summary judgment and no timely appeal was taken therefrom, this court held that appellants were not entitled to appeal from a subsequent order denying their motion for a rehearing, since appellants' motion presented the same issues which the trial court decided when granting summary judgment.

■ In the present case appellants, in their motion for a rehearing, merely cited a recent case and argued that the case required the trial court to withdraw its decision, and thus, they presented the same issues which the trial court decided when granting summary judgment. Those issues can be reviewed on that portion of this appeal which challenges the judgment granting respondent's motion for summary judgment. Thus, the appeal from the order of the trial court denying appellants' motion for a rehearing is dismissed.

On the appeal from the judgment, the appellants argue that the respondent could not lay off a teacher with an individual contract without complying with the "refusal to renew" contract provisions of sec. 118.22, Stats., which provides:

". . . (2) On or before March 15 of the school year during which a teacher holds a contract, the board by which the teacher is employed or an employe at the direction of the board shall give the teacher written notice of renewal or refusal to renew his contract for the ensuing school year. If no such notice is given on or before March 15, the contract then in force shall continue

for the ensuing school year. A teacher who receives a notice of renewal of contract for the ensuing school year, or a teacher who does not receive a notice of renewal or refusal to renew his contract for the ensuing school year on or before March 15, shall accept or reject in writing such contract not later than the following April 15. No teacher may be employed or dismissed except by a majority vote of the full membership of the board. Nothing in this section prevents the modification or termination of a contract by mutual agreement of the teacher and the board. No such board may enter into a contract of employment with a teacher for any period of time as to which the teacher is then under a contract of employment with another board.

"(3) At least 15 days prior to giving written notice of refusal to renew a teacher's contract for the ensuing school year, the employing board shall inform the teacher by preliminary notice in writing that the board is considering nonrenewal of the teacher's contract and that, if the teacher files a request therefor with the board within 5 days after receiving the preliminary notice, the teacher has the right to a private conference with the board prior to being given written notice of refusal to renew his contract."

The appellants support their argument on this issue by asserting that a layoff from employment is the equivalent of a "refusal to renew" a contract under sec. 118.22, Stats. We do not believe this is so when the parties have negotiated a collective bargaining agreement under sec. 111.70, which contains the layoff provisions that are incorporated in the individual teacher's contracts.

A layoff from employment has a different concept in employment relations and implies a temporary separation from employment rather than a permanent termination of employment. Webster's New International Dictionary, 2d edition, defines layoff as "a period of being off or laid off work." The American Heritage Dictionary of

the English Language defines layoff as, "To suspend from employment, as during a slack period."

Appellants contend that the language of sec. 118.22(2), Stats., which provides "No teacher may be employed or dismissed except by a majority vote of the full membership of the board . . ." divides teachers into those who are "employed" by the board and those who are "dismissed" by it. Thus, argue appellants, a "layoff" should be subsumed under the phrase "refusal to renew" or the term "dismissal," and, in effect, they argue that the three terms are equivalent.

Each of these terms has a specific meaning and one cannot be used interchangeably with another. This court pointed out in *Richards v. Board of Education,* 58 Wis. 2d 444, 460b, 206 N.W.2d 597 (1973) that the term "dismiss" means to remove from employment and not the failure to "renew" a contract. In *Millar v. Joint School Dist. 2,* 2 Wis.2d 303, 86 N.W.2d 455 (1957), this court held that a school board has implied power to dismiss a teacher before the expiration of his contract term for good cause and need not comply with sec. 40.41(2), Stats. (presently 118.22(2)) in so doing. However, the court held, if a board chooses to refuse to renew a contract for any cause, it must comply with the notice requirements of that statute.

Just as the terms "dismiss" and "refuse to renew," both of which appear in sec. 118.22(2), Stats., have distinct meanings, so also do the terms "refuse to renew" and "layoff."

Appellants next contend that to construe sec. 118.22, Stats., in such a way as to permit the school board to lay off a teacher in accordance with the provisions of a collective bargaining agreement would frustrate the policy of sec. 111.70, to foster prompt settlement of bargaining disputes through collective negotiation and would

encourage teachers to remain unrepresented. This is so, argue appellants, because the unrepresented teacher or a teacher without a collective agreement would have greater job protection than a represented teacher or a teacher with a collective agreement. Appellants argue that their construction would harmonize secs. 118.22 and 111.70. The effect of their argument is that we should construe sec. 118.22 in a way that would require the Board to proceed under sec. 118.22 when it is considering layoffs under a collective bargaining agreement.

We cannot agree with the appellants. The layoff provisions of the collective bargaining agreement relate only to situations where there is a substantial decrease in student population and grants the teachers laid off for that reason substantial and significant benefits and rights. This is emphasized by the fact that 12 of the 14 teachers laid off were recalled before oral arguments in this case in the trial court. Were it not for the provisions of the agreement, the Board would have been required to proceed under the "refusal to renew" provisions of sec. 118.22, Stats., that relate to a permanent and final termination of employment.

Sec. 111.70, Stats., authorizes municipal employers and employees to collectively bargain on questions concerning "wages, hours and conditions of employment." In *Beloit Education Asso. v. WERC*, 73 Wis.2d 43, 242 N.W. 2d 231 (1976), this court held that a layoff proposal was primarily related to "wages, hours and conditions of employment," and, thus, a mandatory subject of bargaining under sec. 111.70(1) (d). Since the layoff provision in this collective bargaining agreement is directly authorized by sec. 111.70, and is a mandatory subject of collective bargaining, it is incumbent on this court to give effect to both the collective bargaining agreement and the statutes if this can be done. We do not believe sec.

118.22 should be interpreted to preclude collective bargaining on the subject of layoffs which is authorized by sec. 111.70. The specific provisions of a particular layoff clause is, of course, an important element in reaching a collective bargaining agreement.

It is well established that:

". . . It is a cardinal rule of statutory construction that conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed. . . ." *Moran v. Quality Aluminum Casting Co.,* 34 Wis.2d 542, 553, 150 N.W.2d 137 (1967).

Sec. 118.22, Stats., was originally adopted as Chapter 244, Laws of 1943, as secs. 40.40 and 40.41, whereas sec. 111.70 was adopted as Chapter 509, Laws of 1959.

When the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes. *Joint School Dist. No. 2 v. State,* 71 Wis.2d 276, 283, 237 N.W.2d 739 (1976); *State ex rel. Klingler & Schilling v. Baird,* 56 Wis.2d 460, 468, 202 N.W.2d 31 (1972); *Town of Madison v. City of Madison,* 269 Wis. 609, 614, 70 N.W.2d 249 (1955). More specifically, the legislature is presumed to have enacted sec. 111.70, Stats., with full knowledge of the provisions of sec. 118.22. *Joint School Dist. No. 8 v. Wis. E. R. Board,* 37 Wis.2d 483, 493, 494, 155 N.W.2d 78 (1967); *Muskego-Norway Consolidated Schools Joint School Dist. No. 9 v. W.E.R.B.,* 35 Wis.2d 540, 556, 151 N.W.2d 617 (1967). In *Muskego-Norway, supra,* at 556, this court stated:

"The provisions of sec. 111.70, Stats., apply to the authority of school districts to the same extent as the authority of other municipal governing bodies. Sec. 111.70 was enacted after secs. 40.40 and 40.41 [presently secs. 118.21 and 118.22] and is presumed to have been

enacted with a full knowledge of preexisting statutes. Construction of statutes should be done in a way which harmonizes the whole system of law of which they are a part and any conflict should be reconciled if possible."

We do not believe sec. 118.22 and sec. 111.70, Stats., are in conflict. They both can be given effect by construing them together. Sec. 118.22 clearly sets forth that it applies only to cases of renewal and refusal to renew individual teacher's contracts. The construction of sec. 118.22 advocated by appellants would void the provisions of a labor agreement relating to layoffs and nullify the parties' right to bargain on this matter—a right which is conferred by sec. 111.70.

Appellants direct our attention to a statement of this court in *Board of Education v. WERC*, 52 Wis.2d 625, 640, 191 N.W.2d 242 (1971):

"We believe the specific school statutes prevail over the general municipal employee statutes in those instances where both cannot be given effect, or where they do not harmonize."

However, as the rule specifically states, a specific statute controls over a general statute only when two statutes are in conflict. *Moran v. Quality Aluminum Casting Co., supra*, at 553. Since sec. 118.22 and sec. 111.70, Stats., can both be given effect, this rule does not apply to the present case.

In the case before us a collective bargaining agreement had been successfully negotiated. It included detailed and complete layoff procedures and established certain rights and benefits for the respective parties. No one argues that the provisions of the agreement were not incorporated into the individual teacher's contracts by specific reference in a separate paragraph.

Under the agreement, layoffs could be made only because of a substantial decrease of student population.

The Board was required to follow definite procedures both as to layoffs and recalls. Among the other provisions of Sec. 8.5, *Layoff Clause,* the teachers so laid off were to be given a preference for substitute teaching and could secure other employment while laid off, subject to the condition that they be available to commence employment no later than the next school year. Furthermore, the recall rights of teachers continued for a period of seven years.

The layoff clause in the present case does not violate any expressed statutory command of law and is not against public policy. The layoff clause contained in the collective bargaining agreement and specifically incorporated in the individual teacher's contract does not violate sec. 118.22, Stats.

In *Glendale Prof. Policemen's Asso. v. Glendale,* 83 Wis.2d 90, 264 N.W.2d 594 (1978), this court held that a provision in a policemen's collective bargaining agreement requiring the city to promote the most senior qualified applicant did not violate a statute giving the chief of police the power to appoint subordinates subject to the approval of the Board of Police & Fire Commissioners. This court stated:

"Although sec. 62.13(4)(a), Stats., requires all subordinates to be appointed by the chief with the approval of the board, it does not, at least expressly, prohibit the chief or the board from exercising the power of promotion of a qualified person according to a set of rules for selecting one among several qualified applicants. . . . A labor contract requiring the chief to appoint the most senior qualified candidate does not contradict an express command of law. *Compare: WERC v. Teamsters Local No.* 563, *supra.* It does not purport to take away a power expressly conferred by law. *Compare: Durkin v. Board of Police & Fire Commissioners, supra.* A requirement that the chief promote the most senior qualified applicant merely restricts the discretion that would other-

wise exist. . . ." *Glendale Prof. Policemen's Asso. v. Glendale, supra,* at 102, 103.

Similarly, although sec. 118.22(2), Stats., requires a school board to give a teacher written notice of renewal or refusal to renew his contract on or before March 15th and sec. 118.22(3) requires a board to give a preliminary notice of nonrenewal 15 days earlier, neither of these subsections prohibits a school board from exercising its right pursuant to a collective bargaining agreement to lay off a teacher during the term of his individual employment contract. Therefore, it cannot be said that the layoff provision in this case is violative of sec. 118.22.

Furthermore, sec. 118.22(2), Stats., provides in part, "Nothing in this section prevents the modification or termination of a contract by mutual agreement of the teacher and the board." Each of the individual teacher's contracts incorporated by reference the terms and conditions of the collective bargaining agreement, and thus, the parties have agreed to a mutual modification of the contracts. Appellants cannot now complain that the contractual modification expressly authorized by sec. 118.22 is in violation of that section.

Both parties to this appeal have directed our attention to *Faust v. Ladysmith-Hawkins School Systems,* 88 Wis. 2d 525, 277 N.W.2d 303 (1979). *Faust* concerned the individual contract rights of a teacher under sec. 118.22, Stats., as distinguished from the instant case. Here we are concerned not only with the individual teacher's contract but also with the provisions of a collective bargaining agreement on a subject of mandatory collective bargaining which have been specifically incorporated in the teacher's contract. Here we are also concerned with the interpretation of sec. 118.22 in relation to the provisions

of a collective bargaining agreement on a subject of mandatory collective bargaining negotiated under the provisions of sec. 111.70.

Since we hold that the provisions of sec. 118.22, Stats., and sec. 111.70 are not in conflict, and that the provisions of sec. 118.22 are not applicable to the layoff provisions of the instant collective bargaining agreement, we do not reach the other issues raised by the parties.

*By the Court.*—Judgment affirmed. Appeal from order denying motion for rehearing dismissed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The declaratory judgment which the majority affirms includes two adjudications:

1. That the teachers' contracts of Mack and Schermerhorn were in full force and effect for the 1976–1977 school year; and

2. That the two teachers were properly laid off for the 1976–1977 school year in accordance with the lay-off provisions in the 1975–1976 collective bargaining agreement.

The reasoning in the majority opinion is contradictory. On the one hand the majority says that the individual contract was renewed for 1976–1977 pursuant to sec. 118.22, Stats., but the lay-off for 1976–1977, being a temporary separation from employment, is not governed by the dismissal or renewal provisions of sec. 118.22. On the other hand, the majority appears to assume that sec. 118.22 does apply to lay-offs but its application is affected by the existence of the collective bargaining agreement. Accordingly, the majority opinion predicates the validity of the board's lay-off on the existence of and on the terms of the collective bargaining agreement.

I agree with the majority that the teachers' contracts were in full force and effect for the 1976–1977 school year by the operation of sec. 118.22, Stats. Section 118.22

expressly states that "if no [written] notice [of renewal or refusal to renew the contract] is given on or before March 15, the contract then in force shall continue for the ensuing school year." The parties agree that no notice was given pursuant to sec. 118.22(2) and (3) and that therefore the individual teachers' contracts were renewed for the ensuing 1976–1977 school year.

Section 118.22, Stats., creates a procedure for providing information to a teacher as to his or her employment status for the ensuing school year. The statute also gives the school board prompt and early information as to which teachers will remain on the staff for the coming school year and which teachers will have to be replaced. These purposes of sec. 118.22 are applicable throughout the state, and state-wide uniformity of notice and time of hiring and rehiring of teachers is beneficial to teachers, school boards and the public.

In *Faust v. Ladysmith-Hawkins School Systems,* 88 Wis.2d 525, 533, 277 N.W.2d 303 (1979), we concluded that the public policy underlying sec. 118.22 precluded the school board from enforcing a provision in an employment contract that stated that the teacher's contract would not be renewed for the ensuing school year. We held that the teacher and school board could not by contract change the statutory procedure; we held that despite the contract the school board had to follow the nonrenewal procedures set forth in sec. 118.22. We explained the public policy behind sec. 118.22 as follows:

". . . The provisions of that statute advance the legislatively declared public policy of promoting fairness and thoughtful decisionmaking in the rehiring of public school teachers. In addition, it establishes a comprehensive and orderly procedure governing the renewal or nonrenewal of teacher contracts in school districts which have no tenure system. These procedures inure to the benefit of not only the teacher and the school district but to the public at large."

The purposes of sec. 118.22, Stats., continue even though there is a collective bargaining agreement. As the majority points out, sec. 111.70 authorizes school boards and teachers to bargain collectively on questions of wages, hours and conditions of employment (which we have held includes lay-offs). Section 111.70 does not obviate the provisions of secs. 118.21 and 118.22; the act of hiring and rehiring must be accomplished through secs. 118.21 and 118.22, while the terms of the collective bargaining agreement control wages, hours and conditions of employment. Sec. 111.70(3)(a) 4, Stats.

Section 118.22, Stats., does not set forth the substantive terms of the contract being renewed between the board and the teacher; it is silent as to pay, hours, teaching responsibilities, etc., which are subjects for negotiation between the contracting parties. Sec. 118.22 does, however, speak of renewal of the individual contract for the ensuing school year. Sec. 118.22 thus fixes the duration of the renewed contract, just as it fixes the procedure for renewal. The essence of secs. 118.21 and 118.-22 is that each teacher must be employed by an individual written contract, the terms of which are for the most part governed by the parties, but the renewal of which is governed by the statutes. *Muskego-Norway CSJ SD No. 9 v. WERB*, 35 Wis.2d 540, 555, 151 N.W.2d 617 (1966); *Faust v. Ladysmith-Hawkins School Systems*, 88 Wis.2d 525, 277 N.W.2d 303 (1979).

The duration of the renewed contract is fixed by sec. 118.22, Stats., and cannot be changed by a contract previously entered into between the board and teacher. Sec. 118.22 provides that the parties may by mutual agreement modify or terminate the one-year renewed contract. The legislature did not provide that the parties may modify sec. 118.22. The board and teachers in the instant case attempted to modify sec. 118.22. There was no modification by mutual agreement of the 1976–1977 con-

tract, because the renewed contract was not in existence at the time of the adoption of the collective bargaining agreement.

Just as a one-year employment contract cannot bind the parties by a provision that the contract will not be renewed (*Faust, supra,* 88 Wis.2d 525), a one-year employment contract (whether governed by a collective bargaining agreement or not) cannot bind the parties by a provision that upon renewal, the renewed contract shall be for a period of less than one year. According to the majority opinion, the teacher and board can renew a one-year contract under sec. 118.22, and at the same time the board may be empowered under the collective bargaining agreement to decide whether the teacher shall be released from employment for all or part of that year.

Although in this case the board had to notify the teacher of the lay-off by March 15 of the preceding school year, the same date as the last notice of nonrenewal under sec. 118.22, the collective bargaining agreement might have set forth a later date of notification during the preceding school year or might have empowered the board to lay off the teacher anytime during the ensuing school year. The reasoning of the majority opinion applies regardless of the date provided in the collective bargaining agreement for the notice of lay-off. Such a provision in the collective bargaining agreement conflicts with sec. 118.22 and is invalid. "A labor contract term whereby parties agree to violate a law is void." *WERC v. Teamsters Local No. 563,* 75 Wis.2d 602, 612, 250 N.W.2d 696 (1977). Giving effect to such a provision in a collective bargaining agreement replaces the statewide uniform rehiring procedure established by sec. 118.22 with a multitude of procedures that would emerge under different collective bargaining agreements.

I agree with the majority that both sec. 118.22 and sec. 111.70, Stats., can and must be given effect and that

sec. 118.22 should not be interpreted to preclude collective bargaining on the subject of layoffs. The collective bargaining agreement can and should govern the rights, benefits and procedures pertaining to lay-offs. The lay-off provisions of the collective bargaining agreement can provide, for example, the order in which teachers will be dismissed and the order in which they will be rehired. However, the collective bargaining agreement cannot supersede the requirement of sec. 118.22 that a contract, renewed under sec. 118.22, is for the duration of the ensuing school year. If a teacher can be laid off any time during the school year, the individual teaching contract for a full school year is rendered meaningless. A school board which lays off a teacher who has a contract which has been renewed under sec. 118.22 is violating the very terms of that contract which have been prescribed by statute. If a contract for the school year is in existence, a lay-off constitutes a dismissal. A dismissal must comply with sec. 118.22. Under sec. 118.22, Stats., the teacher may be dismissed for cause during the school year or may be dismissed as of the end of the school year by the board notifying the teacher pursuant to sec. 118.22 of the nonrenewal of the contract. Nonrenewal under sec. 118.22 clearly includes the power of a school board to refuse to renew a contract in order to decrease staff.

Accordingly, I would affirm only that part of the judgment which declares that the teachers' contracts for the 1976–1977 school year were in full force and effect.

I have have been authorized to state that Mr. Justice HEFFERNAN and Mr. Justice DAY join in this dissent.