# AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES LOCAL 1901,† Plaintiff-Appellant,

v.

# BROWN COUNTY, Defendant-Respondent.

Court of Appeals

*No. 86–1940. Submitted on briefs May 13, 1987.—Decided July 28, 1987.*

(Also reported in 412 N.W.2d 167.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiff-appellant, there were briefs submitted by *Bruce F. Ehlke* of *Lawton & Cates, S.C.* of Madison.

For the defendant-respondent, there was a brief submitted by *Kenneth J. Bukowski, Brown County Corporation Counsel* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   A.F.S.C.M.E. Local 1901 (union) appeals a judgment dismissing its action against Brown County for civil penalties under sec. 109.11(2), Stats. The union bases its claim on the county's failure to pay back wages due under an arbitration award within thirty-one days of the award. Because we conclude, as did the trial court, that sec. 109.11(2) does not apply under the facts of this case and that the county showed good cause for any delay in complying with the award, we affirm.

Failing to arrive at a collective bargaining agreement in 1982, the parties submitted their final offers to arbitration pursuant to sec. 111.70, Stats. On

February 11, 1983, the arbitrator issued an award in favor of the county. The collective bargaining agreement imposed by the arbitration proceedings called for retroactive payment of wage increases by the county. The county received the arbitrator's decision on February 14, two days before its regularly scheduled monthly board meeting. Citing a one-week agenda deadline and the need for its personnel committee to review the agreement, the county board took no action until its next meeting on March 16, 1983. The board then approved the agreement and paid the back wages on April 5 and April 8, 1983.

The union argues that sec. 109.11(2) imposes a strict obligation on the county to pay back wages due under an arbitration award within thirty-one days of the award. Sections 109.03(1) and 109.11(1) and (2), Stats., provide in part:

> **109.03 When wages payable; pay orders.** (1) Required frequency of payments. Every employer shall as often as monthly pay to every employee engaged in the employer's business ... all wages earned by such employe to a day not more than 31 days prior to the date of such payment.

> **109.11 Penalties.** (1) Any employer who, having the ability to pay, fails to pay the wages due and payable as provided in this chapter or falsely denies the amount or validity thereof or that such wages are due, with intent to secure any discount upon such indebtedness or with intent to annoy, harass, oppress, hinder or defraud the person to whom such wages are due, may be fined ... or imprisoned ....

> (2) In addition to the criminal penalties provided in sub. (1), every employer violating this chapter

shall be liable for the payment of the following increased wages ....

On the other hand, the county argues that sec. 111.70(7m)(e), Stats., governs the enforcement of the arbitration award. Section 111.70(7m)(e) provides in part:

Any party ... failing to implement the [arbitration] award or decision, *unless good cause is shown,* shall be liable for attorney fees, interest on delayed monetary benefits, and other costs incurred in any action by the nonoffending party to enforce the award or decision. [Emphasis supplied.]

The issue before us is which statute applies under the facts of this case. Applying a statute to a particular set of facts is a question of law. *See Ynocencio v. Fesko,* 114 Wis. 2d 391, 396, 338 N.W.2d 461, 463 (1983). We decide such questions without deference to the trial court's decision. *Id.*

We face a situation where two statutory provisions arguably apply to the same factual situation. Chapter 109 addresses the failure of employers to pay wages due. Section 109.01(3), Stats., defines wages as

remuneration payable to an employe for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, supplemental unemployment compensation benefits when required under a binding collective bargaining agreement, bonuses and any other similar advantages agreed upon between the employer and the employe or provided by the employer to the employes as an established policy.

Although not mentioned in the statutory definition's list of examples, back wages arguably fit within the catchall, "any other similar advantages agreed

upon between the employer and employe." Section 111.70(7m)(e) also arguably applies to these facts, directly addressing "delayed monetary benefits" caused by failure to implement an arbitrator's decision.

Moreover, applying the conflicting provisions would yield different results. Chapter 109, if applied, would call for strict civil penalties regardless of the reason for any delay greater than thirty-one days in paying the back wages. Section 111.70(7m)(e) imposes no penalties where good cause is shown for any delay.

■

Because both provisions appear facially to apply to the issue of back wages awarded by an arbitrator's decision, and because the results of applying each provision conflict, it is our duty to harmonize their application to these facts. *See Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815, 820 (1979). Where two conflicting statutes apply to the same subject, the more specific controls. *See Mack v. Joint Sch. Dist. No. 3,* 92 Wis. 2d 476, 490, 285 N.W.2d 604, 611 (1979). We conclude that sec. 111.70(7m)(e) more specifically applies to, and thus controls, the facts of this case.

■

Chapter 109's purpose is clearly to avoid hardship to employees who are not paid within thirty-one days of earning wages. In order to conclude that the retroactive wage increases should be included in ch. 109's definition, we need to consider this purpose. In so doing, we conclude that the county's payment, within two months of receiving the arbitrator's award, is not the type of conduct meant to be penalized under ch. 109.

Here, the county paid the retroactive wage increase as promptly as its usual procedures allowed.

The parties stipulated that the county had paid past retroactive wage increases in the same fashion as it did in 1983. In addition, the union recognized that the county's payment would conform with its past conduct. In its official newsletter, the union stated:

> As you all know by this time, we have received our decision from the arbitrator.... A copy of the '82 contract was sent to us for our negotiators['] signatures. After a careful reading, this will be signed and then sent to the [county's] Personnel Committee. This Committee meets the 2nd and 4th Tuesday of every month. From there, the contract goes to the County board, whose next scheduled meeting is March 16th. Hopefully, it won't be too long after this date that we should be seeing our raise and eventually, the backpay....

The county's payment of the back wages conformed precisely to its past conduct and the union's expectations. Moreover, the county continued to pay wages, at pre-arbitration rates and on a biweekly basis, to its employees during the entire negotiation and arbitration process. Accordingly, we conclude that the county's conduct in this case is not consistent with that intended to be punished by the criminal or civil provisions of ch. 109. Chapter 109 does not control.

Rather than a wrongful withholding of wages, we view the county's conduct more precisely as an alleged failure to conform promptly to the arbitrator's decision. Such alleged refusal to abide by the results of arbitration is covered more specifically by the statute governing arbitration. As a result, we need to determine whether the county acted with good cause in paying the retroactive wage increase within two months of the arbitration award. The trial court found that the county demonstrated good cause. Because we

conclude that the finding is not clearly erroneous, we affirm it. Section 805.17(2), Stats.

■

The parties stipulated at trial that the county payroll employees involved in developing a computer program to calculate and pay the back wages "did the best that they could to see to it that the employees' checks for back wages were issued as soon as possible after the County Board had passed a resolution approving the arbitrator's award." Thus, the only possible delay on the county's part lay in its failure to approve the agreement at the board meeting held two days after the arbitrator's decision was received. The county observed procedures by declining to take up the agreement until its personnel committee had reviewed the contract. Because these procedures were known to the union and had been observed in similar past situations, we conclude that the county's conduct in paying the back wages was not dilatory. The county showed good cause for making the payments when it did. Accordingly, the retroactive wage increase payments did not violate sec. 111.70(7m)(e).[1]

*By the Court.*—Judgment affirmed.

■

---

[1]Because our decision disposes of the appeal, we do not address the other issue raised by the union.